916 So.2d 655 (2005)
In re AMENDMENTS TO THE RULES REGULATING THE FLORIDA BAR.
No. SC05-206.
Supreme Court of Florida.
October 6, 2005.
As Revised on Denial of Rehearing December 8, 2005.
John F. Harkness, Jr., Executive Director, Paul Hill, General Counsel, John Anthony Boggs, Director of Lawyer Regulation, Lori S. Holcomb, Assistant UPL Counsel and Elizabeth C. Tarbert, The Florida Bar, Tallahassee, FL, Gregory S. Parker, Perry, Florida, Honorable Ralph Artigliere, Circuit Court Judge, Bartow, FL, and Henry Matson Coxe, III of Bedell, Dittmar, Devault, et al., Jacksonville, FL, for Petitioner.
John A. Weiss, Richard B. Liss and Patricia S. Etkin of Weiss and Etkin, Tallahassee, FL, W. Hampton Keen, Joette S. Keen, Don Fountain, Gregory P. Huber, Gregory T. Zele and Joseph J. Reiter of Lytal, Reiter, Clark, Fountain and Williams, LLP, West Palm Beach, FL, and Hugh Nilsen Smith of Smith and Fuller, P.A., Belleair Bluffs, FL, for Opponents.
PER CURIAM.
The Florida Bar petitions this Court to consider its proposed amendments to the Rules Regulating the Florida Bar. We have jurisdiction. See Art. V,  15, Fla. Const.
The Bar submitted the proposed amendments to the Board of Governors of The Florida Bar for its recommendation. The Board approved the proposals, except for certain minimal revisions submitted after the proposals were published for comment in the January 1, 2005, edition of The Florida Bar News.[1] In that publication, the Bar instructed interested parties to file any comments directly with the Court. Thereafter, the Bar filed its proposals with the Court.
The Bar proposes amendments to rules 1-3.5 (Retirement), 1-3.6 (Delinquent *656 Members), 1-3.8 (Right to Inventory), 1-7.3 (Membership Fees), 3-2.1 (Definitions, Generally), 3-3.4 (Grievance Committees), 3-5.1 (Types of Discipline, Generally), 3-6.1 (Employment of Certain Attorneys or Former Attorneys, Generally), 3-7.1 (Confidentiality), 3-7.4 (Grievance Committee Procedures), 3-7.6 (Procedures Before a Referee), 3-7.9 (Consent Judgment), 3-7.10 (Reinstatement and Readmission Procedures), 3-7.11 (General Rules of Procedure), 4-1.5 (Fees and Costs for Legal Services), 4-3.4 (Fairness to Opposing Party and Counsel), 4-5.4 (Professional Independence of a Lawyer), 4-7.7 (Evaluation of Advertisements), 4-8.1 (Bar Admission and Disciplinary Matters), 4-8.4 (Misconduct), 4-8.6 (Authorized Business Entities), 6-3.5 (Standards for Certification), 6-3.7 (Emeritus Specialist Status), 6-3.8 (Revocation of Certification), 10-2.1 (Definitions, Generally), 10-6.1 (Taking of Testimony), 10-6.2 (Subpoenas), 10-7.1 (Proceedings for Injunctive Relief), 10-7.2 (Proceedings for Indirect Criminal Contempt), and 10-8.1 (Files). The Bar proposes the addition of new rule 4-5.8 (Procedures for Lawyers Leaving Law Firms and Dissolution of Law Firms). Further, the Bar proposes the deletion of rule 3-7.12 (Disciplinary Resignation from the Florida Bar).[2]
After considering the relevant comments filed and holding oral argument on June 9, 2005, the Court adopts the Bar's proposals with a slight modification to the proposal for rule 3-7.6 (Procedures Before a Referee). As modified, the amendment changes a referee's duties but not a Bar counsel's duties. Thus, the Bar shall continue to make the record available.
The Court wishes to express its sincerest gratitude to The Florida Bar and its members who contributed to the development of these numerous proposals. The Court also thanks the individuals who filed comments, especially those who participated in oral argument.
Accordingly, the Court adopts the amendments to the Rules Regulating the Florida Bar as set forth in the appendix to this opinion. Deletions are indicated by struck-through type, and new language is indicated by underscoring. The comments are included for explanation and guidance only and are not adopted as an official part of the rules. The amendments shall become effective on January 1, 2006, at 12:01 a.m.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.

APPENDIX

RULE 1-3.5 RETIREMENT
Any member of The Florida Bar may retire from The Florida Bar upon petition or other written request to, and approval of, the board of governorsexecutive director. A retired member shall not practice law in this state except upon petition for reinstatement to, and approval of, the board of governorsexecutive director; the payment of all membership fees, costs, or other amounts owed to The Florida Bar; and the completion of all outstanding continuing legal education or basic skills course requirements. A retired member shall be entitled to receive such other privileges *657 as the board of governors may authorize.
A retired member shall remain subject to disciplinary action for acts committed before the effective date of retirement. Acts committed after retirement may be considered in evaluating the member's fitness to resume the practice of law in Florida as elsewhere stated in these Rules Regulating The Florida Bar.
If the executive director is in doubt as to disposition of a petition, the executive director may refer the petition to the board of governors for its action. Action of the executive director or board of governors denying a petition for retirement or reinstatement hereunder may be reviewed upon petition to the Supreme Court of Florida.

RULE 1-3.6 DELINQUENT MEMBERS
Any person now or hereafter licensed to practice law in Florida whoshall be deemed a delinquent member if the member:
(a) fails to pay membership fees,;
(b) fails to comply with continuing legal education or basic skills course requirements, or;
(c) is delinquent in the payment offails to pay the costs assessed in diversion or disciplinary cases within 30 days after the disciplinary decision or diversion recommendation becomes final, unless such time is extended by the board of governors for good cause shown; or
(d) fails to make restitution imposed in diversion cases or disciplinary proceedings brought under these Rules Regulating The Florida Bar within the time specified in the order in such cases or proceedings, unless the time is extended by the board of governors for good cause shown;
(e) fails to pay fees imposed as part of diversion for more than 90 days after the diversion recommendation became final, unless such time is extended by the board of governors for good cause shown; or
(f) fails to pay an award entered in fee arbitration proceedings conducted under the authority stated elsewhere in these rules and 90 days or more have elapsed since the date on which the award became final, unless such time is extended by the board of governors for good cause shown. shall be deemed a delinquent member. While occupying the status of a dDelinquent members, no person shall not engage in the practice of law in Florida nor be entitled to any privileges and benefits accorded to members of The Florida Bar in good standing.

RULE 1-3.8 RIGHT TO INVENTORY
(a) Appointment; Grounds; Authority. Whenever an attorney is suspended, disbarred, becomes a delinquent member, abandons a practice, disappears, dies, or suffers an involuntary leave of absence due to military service, catastrophic illness, or injury, and no partner, personal representative, or other responsible party capable of conducting the attorney's affairs is known to exist, the appropriate circuit court, upon proper proof of the fact, may appoint an attorney or attorneys to inventory the files of the subject attorney (hereinafter referred to as "the subject attorney") and to take such action as seems indicated to protect the interests of clients of the subject attorney.
(b) Maintenance of Attorney-Client Confidences. Any attorney so appointed shall not disclose any information contained in files so inventoried without the consent of the client to whom such file relates except as necessary to carry out the order of the court that appointed the attorney to make the inventory.
*658 (c) Status and Purpose of Inventory Attorney. Nothing herein creates an attorney and client, fiduciary, or other relationship between the inventory attorney and the subject attorney. The purpose of appointing an inventory attorney is to avoid prejudice to clients of the subject attorney and, as a secondary result, prevent or reduce claims against the subject attorney for such prejudice as may otherwise occur.
(d) Rules of Procedure. The Florida Rules of Civil Procedure are applicable to proceedings under this rule.
(e) Designation of Inventory Attorney. Each member of the bar who practices law in Florida shall designate another member of The Florida Bar who has agreed to serve as inventory attorney under this rule. When the services of an inventory attorney become necessary, an authorized representative of The Florida Bar shall contact the designated member and determine the member's current willingness to serve. The designated member shall not be under any obligation to serve as inventory attorney.

RULE 1-7.3 MEMBERSHIP FEES
(a) Membership Fees Requirement. On or before July 1 of each year, every member of The Florida Bar, except those members who have retired, resigned, been disbarred, or been classified as inactive members pursuant to rule 3-7.13, shall pay annual membership fees to The Florida Bar in the amount set by the budget, provided that the board of governors shall not fix the membership fees at more than $265 per annum. At the time of the payment of membership fees every member of The Florida Bar shall file with the executive director a statement setting forth any information that may be required by the board of governors.
Membership fees tendered to The Florida Bar shall not be accepted from any member who: has not paid costs imposed against the member in a diversion case or disciplinary proceeding within 30 days after the disciplinary decision becomes final unless such time is extended by the board of governors for good cause shown; or has not made restitution in the manner and by the date provided in the disciplinary order or agreement. A member who has not paid diversion or disciplinary costs or made restitution as required by this subdivision shall be deemed a delinquent member as defined elsewhere in these rules.
(b) Prorated Membership Fees. Persons admitted to The Florida Bar subsequent to July 1 of any fiscal year shall pay the annual membership fees for that fiscal year prorated on the basis of the number of full calendar months of the fiscal year remaining at the time of their admission.
Failure to pay prorated membership fees shall result in the amount of such prorated membership fees being added to the next annual membership fees billing to the member without penalty. The combined prorated and annual membership fees payment must thereafter be received by The Florida Bar on or before August 15, unless the member elects to pay by installment under this rule.
(c) Installment Payment of Membership Fees. Members of The Florida Bar may elect to pay annual membership fees in 3 equal installments as follows:
(1) in the second and third year of their admission to The Florida Bar; or
(2) if the member is employed by a federal, state, or local government in a non-elected position that requires the individual to maintain membership in good standing within The Florida Bar.
A member's notice of election to pay membership fees in installments under this *659 rule and the first installment payment thereunder must be postmarked no later than August 15. The second and third installment payments must be postmarked no later than November 1 and February 1, respectively.
Second and/or third installment payments postmarked after their respective due date(s) shall be subject to a one-time late charge of $50 per fiscal year, which shall accompany the final payment unless adjusted by the executive director with concurrence of the executive committee for good cause shown.
The executive director shall send written notice by registered or certified mail to the last official bar address of each member whose membership fees and late fees have not been paid under this rule by February 1. Upon failure to pay membership fees and any late charges under this rule by March 15, unless adjusted by the executive director with concurrence of the executive committee for good cause shown, the member shall be a delinquent member.
Each member who elects to pay annual membership fees in installments under this rule may be charged an additional administrative fee to defray the costs of this activity as set by the Board of Governors.
(d) Election of Inactive Membership. A member in good standing may elect by August 15 of a fiscal year to be classified as an inactive member. Such election shall be made only by indication of such choice on the annual membership fees statement and payment of the prescribed annual membership fees. Failure to make the initial election by August 15 shall constitute a waiver of the member's right to the election until the next fiscal year. Once a member has properly elected to be classified as an inactive member, such classification shall continue from fiscal year to fiscal year until such time as the member is reinstated as a member in good standing as elsewhere provided in these rules. The election of inactive status shall be subject to the restrictions and limitations elsewhere provided.
Membership fees for inactive members shall be set by the board of governors in an amount not to exceed $175 per annum.
(e) Late Payment of Membership Fees. Payment of annual membership fees must be postmarked no later than August 15. Membership fees payments postmarked after August 15 shall be accompanied by a late charge of $50 unless adjusted by the executive director with concurrence of the executive committee for good cause shown. The executive director shall send written notice by registered or certified mail to the last official bar address of each member whose membership fees have not been paid by August 15. Upon failure to pay membership fees and any late charges by September 30, unless adjusted by the executive director with concurrence of the executive committee for good cause shown, the member shall be a delinquent member.

RULE 3-2.1 GENERALLY
Wherever used in these rules the following words or terms shall have the meaning herein set forth unless the use thereof shall clearly indicate a different meaning:
(a) Bar Counsel. A member of The Florida Bar representing The Florida Bar in any proceeding under these rules.
(b) The Board or the Board of Governors. The board of governors of The Florida Bar.
(c) Complainant or Complaining Witness. Any person who has complained of the conduct of any member of The Florida Bar to any officer or agency of The Florida Bar.
*660 (d) This Court or the Court. The Supreme Court of Florida.
(e) Court of this State. A state court authorized and established by the constitution or laws of the state of Florida.
(f) Diversion to Practice and Professionalism Enhancement Programs. The removal of a disciplinary matter from the disciplinary system and placement of the matter in a skills enhancement program in lieu of a disciplinary sanction.
(g) Executive Committee. The executive committee of the board of governors of The Florida Bar.
(h) Executive Director. The executive director of The Florida Bar.
(i) Practice and Professionalism Enhancement Programs. Programs operated either as a diversion from disciplinary action or as a part of a disciplinary sanction that are intended to provide educational opportunities to members of the bar for enhancing skills and avoiding misconduct allegations.
(j) Probable Cause. A finding by an authorized agency that there is cause to believe that a member of The Florida Bar is guilty of misconduct justifying disciplinary action.
(k) Referral to Practice and Professionalism Enhancement Programs. Placement of a lawyer in skills enhancement programs as a disciplinary sanction.
(l) Referee. A judge or retired judge appointed to conduct proceedings as provided under these rules.
(m) Respondent. A member of The Florida Bar or an attorney subject to these rules who is accused of misconduct or whose conduct is under investigation.
(n) Staff Counsel. The director of the legal division and an A lawyer employee of The Florida Bar designated by the executive director and authorized by these Rules Regulating The Florida Bar to approve formal complaints, conditional guilty pleas for consent judgments, and diversion recommendations and to make appointment of bar counsel.
(o) Chief Branch Discipline Counsel. Chief branch discipline counsel is the counsel in charge of a branch office of The Florida Bar. Any counsel employed by The Florida Bar may serve as chief branch discipline counsel at the direction of the regularly assigned chief branch discipline counsel or staff counsel.
(p) Designated Reviewer. The designated reviewer is a member of the board of governors responsible for review and other specific duties as assigned by the board of governors with respect to a particular grievance committee or matter. If a designated reviewer recuses or is unavailable, any other board member may serve as designated reviewer in that matter. The designated reviewer will be selected, from time to time, by the board members from the circuit of such grievance committee. In circuits having an unequal number of grievance committees and board members, review responsibility will be reassigned, from time to time, to equalize workloads. On such reassignments responsibility for all pending cases from a particular committee passes to the new designated reviewer. The chief branch discipline counsel will be given written notice of changes in the designated reviewing members for a particular committee.
(q) Final Adjudication. A decision by the authorized disciplinary authority or court issuing a sanction for professional misconduct that is not subject to judicial review except on direct appeal to the Supreme Court of the United States.

*661 RULE 3-3.4 GRIEVANCE COMMITTEES
There shall be such grievance committees as are herein provided, each of which shall have the authority and jurisdiction required to perform the functions hereinafter assigned to it and which shall be constituted and appointed as follows:
(a) Circuit Grievance Committees. There shall be at least 1 grievance committee for each judicial circuit of this state and as many more as shall be found desirable by the board. Such committees shall be designated as judicial circuit grievance committees, and in circuits having more than 1 committee they shall be identified by alphabetical designation in the order of creation. Such committees shall be continuing bodies notwithstanding changes in membership, and they shall have jurisdiction and the power to proceed in all matters properly before them.
(b) Special Grievance Committees. The board may from time to time appoint grievance committees for the purpose of such investigations as may be assigned in accordance with these rules. Such committees shall continue only until the completion of tasks assigned, and they shall have jurisdiction and power to proceed in all matters so assigned to them. All provisions concerning grievance committees shall be applicable to special grievance committees except those concerning terms of office and other restrictions thereon as may be imposed by the board. Any vacancies occurring in such a committee shall be filled by the board, and such changes in members shall not affect the jurisdiction and power of the committee to proceed in all matters properly before it.
(c) Membership, Appointment, and Eligibility. Each grievance committee shall be appointed by the board and shall consist of not fewer than 3 members. At least one-third of the committee members shall be nonlawyers. All appointees shall be of legal age and, except for special grievance committees, shall be residents of the circuit or have their principal office in the circuit. The lawyer members of the committee shall have been members of The Florida Bar for at least 5 years.
No member of a grievance committee shall perform any grievance committee function when that member:
(1) is related by blood or marriage to the complainant or respondent;
(2) has a financial, business, property, or personal interest in the matter under consideration or with the complainant or respondent;
(3) has a personal interest that could be affected by the outcome of the proceedings or that could affect the outcome; or
(4) is prejudiced or biased toward either the complainant or the respondent.
Upon notice of the above prohibitions the affected members should recuse themselves from further proceedings. The grievance committee chair shall have the power to disqualify any member from any proceeding in which any of the above prohibitions exist and are stated of record or in writing in the file by the chair.
(d) Terms. The terms of the members shall be for 1 year from the date of administration of the oath of service on the grievance committee or until such time as their successors are appointed and qualified. Continuous service of a member shall not exceed 3 years. A member shall not be reappointed for a period of 3 years after the end of the member's term; provided, however, the expiration of the term of any member shall not disqualify such member from concluding any investigation or participating in disposition of cases thenthat were pending before the committee when the member' s term expired. A *662 member who continues to serve on the grievance committee under the authority of this subdivision shall not be counted as a member of the committee when calculating the minimum number of public members required by this rule.
(e) Officers. There shall be a chair and vice-chair designated by the designated reviewer of that committee. The chair and vice-chair shall be members of The Florida Bar.
(f) Oath. Each new member of a committee shall subscribe to an oath to fulfill the duties of the office. Such oaths shall be filed with the executive director and placed with the official records of The Florida Bar.
(g) Removal. Any member may be removed from office by the designated reviewer of that committee or the board.
(h) Grievance Committee Meetings. Grievance committees should meet at regularly scheduled times, not less frequently than quarterly each year, and either the chair or vice-chair may call special meetings. Grievance committees should meet at least monthly during any period when the committee has 1 or more pending cases assigned for investigation and report. The time, date, and place of regular monthly meetings should be set in advance by agreement between the committee and chief branch discipline counsel.

RULE 3-5.1 GENERALLY
A judgment entered, finding a member of The Florida Bar guilty of misconduct, shall include one or more of the following disciplinary measures:
(a) Admonishments. A Supreme Court of Florida order finding minor misconduct and adjudging an admonishment may direct the respondent to appear before the Supreme Court of Florida, the board of governors, grievance committee, or the referee for administration of the admonishment. A grievance committee report and finding of minor misconduct or the board of governors, upon review of such report, may direct the respondent to appear before the board of governors or the grievance committee for administration of the admonishment. A memorandum of administration of an admonishment shall thereafter be made a part of the record of the proceeding.
(b) Minor Misconduct. Minor misconduct is the only type of misconduct for which an admonishment is an appropriate disciplinary sanction.
(1) Criteria. In the absence of unusual circumstances misconduct shall not be regarded as minor if any of the following conditions exist:
(A) the misconduct involves misappropriation of a client's funds or property;
(B) the misconduct resulted in or is likely to result in actual prejudice (loss of money, legal rights, or valuable property rights) to a client or other person;
(C) the respondent has been publicly disciplined in the past 3 years;
(D) the misconduct involved is of the same nature as misconduct for which the respondent has been disciplined in the past 5 years;
(E) the misconduct includes dishonesty, misrepresentation, deceit, or fraud on the part of the respondent; or
(F) the misconduct constitutes the commission of a felony under applicable law.
(2) Discretion of Grievance Committee. Despite the presence of 1 or more of the criteria described in subdivision (1) above, a grievance committee *663 may recommend an admonishment for minor misconduct or diversion to a practice and professionalism enhancement program when unusual circumstances are present. When the grievance committee recommends an admonishment for minor misconduct or diversion to a practice and professionalism enhancement program under such circumstances, its report shall contain a detailed explanation of the circumstances giving rise to the committee's recommendation.
(3) Recommendation of Minor Misconduct. If a grievance committee finds the respondent guilty of minor misconduct or if the respondent shall admit guilt of minor misconduct and the committee concurs, the grievance committee shall file its report recommending an admonishment, recommending the manner of administration, and for the taxing of costs against the respondent. The report recommending an admonishment shall be forwarded to staff counsel and the designated reviewer for review. If staff counsel does not return the report to the grievance committee to remedy a defect therein, or if the report is not referred to the disciplinary review committee by the designated reviewer (as provided in rule 3-7.5(b)), the report shall then be served on the respondent by bar counsel. The report and finding of minor misconduct shall become final unless rejected by the respondent within 15 days after service of the report. If rejected by the respondent, the report shall be referred to bar counsel and referee for trial on complaint of minor misconduct to be prepared by bar counsel as in the case of a finding of probable cause. If the report of minor misconduct is not rejected by the respondent, notice of the finding of minor misconduct shall be given, in writing, to the complainant.
(4) Rejection of Minor Misconduct Reports. The rejection by the board of governors of a grievance committee report of minor misconduct, without dismissal of the case, or remand to the grievance committee, shall be deemed a finding of probable cause. The rejection of such report by a respondent shall be deemed a finding of probable cause for minor misconduct. Upon trial before a referee following rejection by a respondent of a report of minor misconduct, the referee may recommend any discipline authorized under these rules.
(5) Admission of Minor Misconduct. Within 15 days after a finding of probable cause by a grievance committee, a respondent may tender a written admission of minor misconduct to bar counsel or the grievance committee. An admission of minor misconduct may be conditioned upon acceptance by the grievance committee, but the respondent may not condition the admission of minor misconduct upon the method of administration of the admonishment or upon nonpayment of costs incurred in the proceedings. Such an admission may be tendered after a finding of probable cause (but before the filing of a complaint) only if such an admission has not been previously tendered. If the admission is tendered after a finding of probable cause, the grievance committee may consider such admission without further evidentiary hearing and may either reject the admission, thereby affirming its prior action, or accept the admission and issue its report of minor misconduct. If a respondent's admission is accepted by the grievance committee, the respondent may not thereafter reject a report of the committee recommending an admonishment for minor misconduct. If the admission *664 of minor misconduct is rejected, such admission shall not be considered or used against the respondent in subsequent proceedings.
(c) Probation. The respondent may be placed on probation for a stated period of time of not less than 6 months nor more than 3 years or for an indefinite period determined by conditions stated in the order. The judgment shall state the conditions of the probation, which may include but are not limited to the following:
(1) completion of a practice and professionalism enhancement program as provided elsewhere in these rules;
(2) supervision of all or part of the respondent's work by a member of The Florida Bar;
(3) the making of reports to a designated agency;
(4) the satisfactory completion of a course of study or a paper on legal ethics approved by the Supreme Court of Florida;
(5) such supervision over fees and trust accounts as the court may direct; or
(6) restrictions on the ability to advertise legal services, either in type of advertisement or a general prohibition for a stated period of time, in cases in which rules regulating advertising have been violated or the legal representation in which the misconduct occurred was obtained by advertising.
The respondent will also reimburse the bar for the costs of supervision. Upon Ffailure of a respondent to observecomply with the conditions of the probation or a finding of probable cause as to conduct of the respondent committed during the period of probation shall terminate the probation. In such event, even though such finding of probable cause shall be made after the expiration of the period of probation, the judgment shall be reconsidered and an appropriate judgment shall be entered. On termination of probation for failure to observe the conditions of probation or on a finding of probable cause for misconduct committed during the period of probation, the attorney respondent may be punished for contempt or suspended from the practice of law on petition by The Florida Bar, and any such suspension shall continue until the respondent may be reinstated to the practice of law as provided elsewhere in these rulesas provided elsewhere in these Rules Regulating The Florida Bar. An order of the court imposing sanctions for contempt under this rule may also terminate the probation previously imposed.
(d) Public Reprimand. A public reprimand shall be administered in the manner prescribed in the judgment but all such reprimands shall be reported in the Southern Reporter. Due notice shall be given to the respondent of any proceeding set to administer the reprimand. The respondent shall appear personally before the Supreme Court of Florida, the board of governors, any judge designated to administer the reprimand, or the referee, if required, and such appearance shall be made a part of the record of the proceeding.
(e) Suspension. The respondent may be suspended from the practice of law for a definite period of time or an indefinite period thereafter to be determined by the conditions imposed by the judgment. During such suspension the respondent shall continue to be a member of The Florida Bar but without the privilege of practicing, and, upon the expiration of the suspension period and the satisfaction of all conditions accompanying the suspension, the respondent shall become eligible to all of the privileges of members in The Florida Bar. A suspension of 90 days or *665 less shall not require proof of rehabilitation or passage of the Florida bar examination. A suspension of more than 90 days shall require proof of rehabilitation and may require passage of all or part of the Florida bar examination. No suspension shall be ordered for a specific period of time in excess of 3 years.
(f) Disbarment. A judgment of disbarment terminates the respondent's status as a member of the bar. Permanent disbarment shall preclude readmission. A former member who has not been permanently disbarred may only be admitted again upon full compliance with the rules and regulations governing admission to the bar. Except as might be otherwise provided in these rules, no application for readmission may be tendered within 5 years after the date of disbarment or such longer period as the court might determine in the disbarment order and thereafter until all court-ordered restitution and outstanding disciplinary costs have been paid.
Disbarment is the presumed sanction for lawyers found guilty of theft from a lawyer's trust account or special trust funds received or disbursed by a lawyer as guardian, personal representative, receiver, or in a similar capacity such as trustee under a specific trust document. A respondent found guilty of such theft shall have the opportunity to offer competent, substantial evidence to rebut the presumption that disbarment is appropriate.
(g) Notice to Clients. Upon service on the respondent of an order of disbarment, disbarment on consent, suspension, disciplinary resignation, emergency suspension, emergency probation, or placement on the inactive list for incapacity not related to misconduct, the respondent shall, unless this requirement is waived or modified in the court's order, forthwith furnish a copy of the order to:
(1) all of the respondent's clients with matters pending in the respondent's practice,;
(2) all opposing counsel or co-counsel in the matters listed in (1), above; and
(3) all courts, tribunals, or adjudicative agencies before which the respondent is counsel of record.
Within 30 days after service of the order the respondent shall furnish bar counsel with a sworn affidavit listing the names and addresses of all persons and entities that have been furnished copies of the order.
(h) Forfeiture of Fees. An order of the Supreme Court of Florida or a report of minor misconduct adjudicating a respondent guilty of entering into, charging, or collecting a fee prohibited by the Rules Regulating The Florida Bar may order the respondent to forfeit the fee or any part thereof. In the case of a clearly excessive fee, the excessive amount of the fee may be ordered returned to the client, and a fee otherwise prohibited by the Rules Regulating The Florida Bar may be ordered forfeited to The Florida Bar Clients' Security Fund and disbursed in accordance with its rules and regulations.
(i) Restitution. In addition to any of the foregoing disciplinary sanctions and any disciplinary sanctions authorized elsewhere in these rules, the respondent may be ordered or agree to pay restitution to a complainant or other person if the disciplinary order finds that the respondent has received a clearly excessive, illegal, or prohibited fee or that the respondent has converted trust funds or property. In such instances the amount of restitution shall be specifically set forth in the disciplinary order or agreement and shall not exceed the amount by which a fee is clearly excessive, in the case of a prohibited or illegal fee shall not exceed the amount of such fee, or in the case of conversion shall *666 not exceed the amount of the conversion established in disciplinary proceedings. The disciplinary order or agreement shall also state to whom restitution shall be made and the date by which it shall be completed. Failure to comply with the order or agreement shall not preclude further proceedings under these rules.
(j) Disciplinary Resignation Disbarment on Consent. A respondent may be allowed to resignsurrender membership in The Florida Bar in lieu of defending against allegations of disciplinary violations by agreeing to disbarment on consent. Disbarment on consent shall have the same effect as and shall be governed by the same rules as provided for disbarment elsewhere in these Rules Regulating The Florida Bar.If accepted by the Supreme Court of Florida, a disciplinary resignation terminates the respondent's status as a member of the bar. A former member whose disciplinary resignation has been accepted may only be admitted again upon full compliance with the rules and regulations governing admission to the bar. Disciplinary resignation is the functional equivalent of disbarment in that both sanctions terminate the license and privilege to practice law and both require readmission to practice under the Rules of the Supreme Court Relating to Admissions to the Bar. Except as otherwise provided in these rules, no application for admission may be tendered within 3 years after the date of the order of the Supreme Court of Florida that accepted the disciplinary resignation or such additional time as the respondent may have stated in the petition for disciplinary resignation. A petition that states that disciplinary resignation is without leave to apply for readmission shall preclude readmission to the bar.
Matters involving disbarment on consent shall be processed in the same manner as conditional guilty pleas for consent judgments as provided elsewhere in these Rules Regulating The Florida Bar.

RULE 3-6.1 GENERALLY
An authorized business entity (as defined elsewhere in these rules) may employ individuals subject to this rule to perform such services only as may ethically be performed by other lay persons employed by authorized business entities:.
(a) Individuals Subject to This Rule. Individuals subject to this rule are suspended attorneys and former attorneys who have been disbarred, disbarred on consent, or whose disciplinary resignations have been allowed.
(b) Definition of Employment. An individual subject to this rule shall be considered as an employee of an authorized business entity if the individual is a salaried or hourly employee or volunteer worker for an authorized business entity, or an independent contractor providing services to an authorized business entity.
(c) Employment by Former Subordinates. An individual subject to this rule may not, for a period of 3 years from the entry of the order pursuant to which the suspension, disciplinary resignation, or disbarment became effective, or until the individual is reinstated to the practice of law, whichever occurs sooner, be employed by or work under the supervision of another attorney who was supervised by the individual at the time of or subsequent to the acts giving rise to the order.
(d) Notice of Employment. Before employment commences the employer shall provide The Florida Bar with a notice of employment and a detailed description of the intended services to be provided by the employee.
(e) Client Contact. No employee shall have direct contact with any client. Direct *667 client contact does not include the participation of the employee as an observer in any meeting, hearing, or interaction between a supervising attorney and a client.
(f) Reports by Employee and Employer. The employee and employer shall submit sworn information reports, quarterly based on a calendar year, to The Florida Bar. Such reports shall include statements that no aspect of the employee's work has involved the unlicensed practice of law, that the employee has had no direct client contact, and that the employee did not receive, disburse, or otherwise handle trust funds or property.

RULE 3-7.1 CONFIDENTIALITY
(a) Scope of Confidentiality. All matters including files, preliminary investigation reports, interoffice memoranda, records of investigations, and the records in trials and other proceedings under these rules, except those disciplinary matters conducted in circuit courts, are property of The Florida Bar. All of those matters shall be confidential and shall not be disclosed except as provided herein. When disclosure is permitted under these rules, it shall be limited to information concerning the status of the proceedings and any information that is part of the public record as defined in these rules.
Unless otherwise ordered by this court or the referee in proceedings under these rules, nothing in these rules shall prohibit the complainant, respondent, or any witness from disclosing the existence of proceedings under these rules, or from disclosing any documents or correspondence served on or provided to those persons.
(1) Pending Investigations. Disciplinary matters pending at the initial investigatory and grievance committee levels shall be treated as confidential by The Florida Bar, except as provided in rules 3-7.1(e) and (k).
(2) Minor Misconduct Cases. Any case in which a finding of minor misconduct has been entered by action of the grievance committee or board shall be public information.
(3) Probable Cause Cases. Any disciplinary case in which a finding of probable cause for further disciplinary proceedings has been entered shall be public information. For purposes of this subdivision a finding of probable cause shall be deemed to have been made in those cases authorized by rule 3-3.2(a), for the filing of a formal complaint without the prior necessity of a finding of probable cause.
(4) No Probable Cause Cases. Any disciplinary case that has been concluded by a finding of no probable cause for further disciplinary proceedings shall be public information.
(5) Diversion or Referral to Grievance Mediation Program. Any disciplinary case that has been concluded by diversion to a practice and professionalism enhancement program or by referral to the grievance mediation program shall be public information upon the entry of such a recommendation.
(6) Contempt Cases. Contempt proceedings authorized elsewhere in these rules shall be public information even though the underlying disciplinary matter is confidential as defined in these rules.
(7) Incapacity Not Involving Misconduct. Proceedings for placement on the inactive list for incapacity not involving misconduct shall be public information upon the filing of the petition with the Supreme Court of Florida.
(8) Petition for Emergency Suspension or Probation. Proceedings seeking *668 a petition for emergency suspension or probation shall be public information.
(9) Proceedings on Determination or Adjudication of Guilt of Criminal Misconduct. Proceedings on determination or adjudication of guilt of criminal misconduct, as provided elsewhere in these rules, shall be public information.
(10) Professional Misconduct in Foreign Jurisdiction. Proceedings based on disciplinary sanctions entered by a foreign court or other authorized disciplinary agency, as provided elsewhere in these rules, shall be public information.
(11) Reinstatement Proceedings. Reinstatement proceedings, as provided elsewhere in these rules, shall be public information.
(12) Disciplinary Resignations. Proceedings involving petitions for disciplinary resignation, as provided elsewhere in these rules, shall be public information.
(b) Public Record. The public record shall consist of the record before a grievance committee, the record before a referee, the record before the Supreme Court of Florida, and any reports, correspondence, papers, recordings, and/or transcripts of hearings furnished to, served on, or received from the respondent or the complainant.
(c) Circuit Court Proceedings. Proceedings under rule 3-3.5 shall be public information.
(d) Limitations on Disclosure. Any material provided to The Florida Bar that is confidential under applicable law shall remain confidential and shall not be disclosed except as authorized by the applicable law. If this type of material is made a part of the public record, that portion of the public record may be sealed by the grievance committee chair, the referee, or the Supreme Court of Florida.
(e) Response to Inquiry. Authorized representatives of The Florida Bar shall respond to specific inquiries concerning matters that are in the public domain, but otherwise confidential under the rules, by acknowledging the status of the proceedings.
(f) Notice to Law Firms. When a disciplinary file is opened the respondent shall disclose to the respondent's current law firm and, if different, the respondent's law firm at the time of the act or acts giving rise to the complaint, the fact that a disciplinary file has been opened. Disclosure shall be in writing and in the following form:
A complaint of unethical conduct against me has been filed with The Florida Bar. The nature of the allegations are __________. This notice is provided pursuant to rule 3-7.1(gf) of the Rules Regulating The Florida Bar.
The notice shall be provided within 15 days of notice that a disciplinary file has been opened and a copy of the above notice shall be served on The Florida Bar.
(g) Production of Disciplinary Records Pursuant to Subpoena. The Florida Bar, pursuant to a valid subpoena issued by a regulatory agency, may provide any documents that are a portion of the public record, even if the disciplinary proceeding is confidential under these rules. The Florida Bar may charge a reasonable fee for identification of and photocopying the documents.
(h) Notice to Judges. Any judge of a court of record upon inquiry of the judge shall be advised and, absent an inquiry, may be advised as to the status of a confidential disciplinary case and may be provided with a copy of documents in the file that would be part of the public record if *669 the case was not confidential. The judge shall maintain the confidentiality of the records and shall not otherwise disclose the status of the case.
(i) Evidence of Crime. The confidential nature of these proceedings shall not preclude the giving of any information or testimony to authorities authorized to investigate alleged criminal activity.
(j) Chemical Dependency and Psychological Treatment. That an attorney has voluntarily sought, received, or accepted treatment for chemical dependency or psychological problems shall be confidential and shall not be admitted as evidence in disciplinary proceedings under these rules unless agreed to by the attorney who sought the treatment.
For purposes of this subdivision, an attorney shall be deemed to have voluntarily sought, received, or accepted treatment for chemical dependency or psychological problems if the attorney was not under compulsion of law or rule to do so, or if the treatment is not a part of conditional admission to The Florida Bar or of a disciplinary sanction imposed under these rules.
It is the purpose of this subdivision to encourage attorneys to voluntarily seek advice, counsel, and treatment available to attorneys, without fear that the fact it is sought or rendered will or might cause embarrassment in any future disciplinary matter.
(k) Response to False or Misleading Statements. If public statements that are false or misleading are made about any otherwise confidential disciplinary case, The Florida Bar may disclose all information necessary to correct such false or misleading statements.
(l) Disclosure by Waiver of Respondent. Upon written waiver executed by a respondent, The Florida Bar may disclose the status of otherwise confidential disciplinary proceedings and provide copies of the public record to:
(1) the Florida Board of Bar Examiners or the comparable body in other jurisdictions for the purpose of evaluating the character and fitness of an applicant for admission to practice law in that jurisdiction; or
(2) Florida judicial nominating commissions or the comparable body in other jurisdictions for the purpose of evaluating the character and fitness of a candidate for judicial office; or
(3) the governor of the State of Florida for the purpose of evaluating the character and fitness of a nominee to judicial office.

RULE 3-7.4 GRIEVANCE COMMITTEE PROCEDURES
(a) Notice of Hearing. When notice of a grievance committee hearing is sent to the respondent, such notice shall be accompanied by a list of the grievance committee members.
(b) Complaint Filed With Grievance Committee. A complaint received by a committee direct from a complainant shall be reported to the appropriate bar counsel for docketing and assignment of a case number, unless the committee resolves the complaint within 10 days after receipt of the complaint. A written report to bar counsel shall include the following information: complainant's name and address, respondent's name, date complaint received by committee, copy of complaint letter or summary of the oral complaint made, and the name of the committee member assigned to the investigation. Formal investigation by a grievance committee may proceed after the matter has been referred to bar counsel for docketing.
*670 (c) Investigation. A grievance committee is required to consider all charges of misconduct forwarded to the committee by bar counsel whether based upon a written complaint or not.
(d) Conduct of Proceedings. The proceedings of grievance committees may be informal in nature and the committees shall not be bound by the rules of evidence.
(e) No Delay for Civil or Criminal Proceedings. An investigation shall not be deferred or suspended without the approval of the board even though the respondent is made a party to civil litigation or is a defendant or is acquitted in a criminal action, notwithstanding that either of such proceedings involves the subject matter of the investigation.
(f) Counsel and Investigators. Upon request of a grievance committee, staff counsel may appoint a bar counsel or an investigator to assist the committee in an investigation. Bar counsel shall assist each grievance committee in carrying out its investigative and administrative duties and shall prepare status reports for the committee, notify complainants and respondents of committee actions as appropriate, and prepare all reports reflecting committee findings of probable cause, no probable cause, recommended discipline for minor misconduct, and letters of advice after no probable cause findings.
(g) Quorum, Panels, and Vote.
(1) Quorum. Three members of the committee, 2 of whom must be lawyers, shall constitute a quorum.
(2) Panels. The grievance committee may be divided into panels of not fewer than 3 members, 2 of whom must be lawyers. Division of the grievance committee into panels shall only be upon concurrence of the designated reviewer and the chair of the grievance committee. The 3-member panel shall elect 1 of its lawyer members to preside over the panel's actions. If the chair or vice-chair is a member of a 3-member panel, the chair or vice-chair shall be the presiding officer.
(3) Vote. All findings of probable cause and recommendations of guilt of minor misconduct shall be made by affirmative vote of a majority of the committee members present, which majority must number at least 2 members. There shall be no required minimum number of lawyer members voting in order to satisfy the requirements of this rule. The number of committee members voting for or against the committee report shall be recorded. Minority reports may be filed. A lawyer grievance committee member may not vote on the disposition of any matter in which that member served as the investigating member of the committee.
(h) Rights and Responsibilities of the Respondent. The respondent may be required to testify and to produce evidence as any other witness unless the respondent claims a privilege or right properly available to the respondent under applicable federal or state law. The respondent may be accompanied by counsel. At a reasonable time before any finding of probable cause or minor misconduct is made, the respondent shall be advised of the conduct that is being investigated and the rules that may have been violated. The respondent shall be provided with all materials considered by the committee and shall be given an opportunity to make a written statement, sworn or unsworn, explaining, refuting, or admitting the alleged misconduct.
(i) Rights of the Complaining Witness. The complaining witness is not a party to the disciplinary proceeding. Unless *671 it is found to be impractical by the chair of the grievance committee due to unreasonable delay or other good cause, the complainant shall be granted the right to be present at any grievance committee hearing when the respondent is present before the committee. Neither unwillingness nor neglect of the complaining witness to cooperate, nor settlement, compromise, or restitution, will excuse the completion of an investigation. The complaining witness shall have no right to appeal.
(j) Finding of No Probable Cause.
(1) Authority of Grievance Committee. A grievance committee may terminate an investigation by finding that no probable cause exists to believe that the respondent has violated these rules. The committee may issue a letter of advice to the respondent in connection with the finding of no probable cause.
(2) Notice of Committee Action. Bar counsel shall notify the respondent and complainant of the action of the committee.
(3) Effect of No Probable Cause Finding. A finding of no probable cause by a grievance committee shall not preclude the reopening of the case and further proceedings therein.
(4) Disposition of Committee Files. Upon the termination of the grievance committee's investigation, the committee's file shall be forwarded to bar counsel for disposition in accord with established bar policy.
(k) Letter Reports in No Probable Cause Cases. Upon a finding of no probable cause, bar counsel will submit a letter report of the no probable cause finding to the complainant, presiding member, investigating member, and the respondent, including any documentation deemed appropriate by bar counsel and explaining why the complaint did not warrant further proceedings. Letters of advice issued by a grievance committee in connection with findings of no probable cause shall be signed by the presiding member of the committee. Letter reports and letters of advice shall not constitute a disciplinary sanction.
(l) Preparation, Forwarding, and Review of Grievance Committee Complaints. If a grievance committee finds probable cause, the bar counsel assigned to the committee shall promptly prepare a record of its investigation and a formal complaint. The record before the committee shall consist of all reports, correspondence, papers, and/or recordings furnished to or received from the respondent, and the transcript of grievance committee meetings or hearings, if the proceedings were attended by a court reporter; provided, however, that the committee may retire into private session to debate the issues involved and to reach a decision as to the action to be taken. The formal complaint shall be signedapproved by the member of the committee who presided in the proceeding. The formal complaint shall be in such form as shall be prescribed by the board. If the presiding member of the grievance committee disagrees with the form of the complaint, the presiding member may direct bar counsel to make changes accordingly. If bar counsel does not agree with the changes, the matter shall be referred to the designated reviewer of the committee for appropriate action. When a formal complaint by a grievance committee is not referred to the designated reviewer, or returned to the grievance committee for further action, the formal complaint shall be promptly forwarded to and reviewed by staff counsel who shall file the formal complaint, and furnish a copy of the formal complaint to the respondent. *672 A copy of the record shall be made available to the respondent at the respondent's expense.
(m) Recommendation of Admonishment for Minor Misconduct. If the committee recommends an admonishment for minor misconduct, the grievance committee report shall be drafted by bar counsel and signed by the presiding member. The committee report need only include: (1) the committee's recommendations regarding the admonishment, revocation of certification, and conditions of recertification; (2) the committee's recommendation as to the method of administration of the admonishment; (3) a summary of any additional charges that will be dismissed if the admonishment is approved; (4) any comment on mitigating, aggravating, or evidentiary matters that the committee believes will be helpful to the board in passing upon the admonishment recommendation; and (5) an admission of minor misconduct signed by the respondent, if the respondent has admitted guilt to minor misconduct. No record need be submitted with such a report. After the presiding member signs the grievance committee report, the report shall be returned to bar counsel. The report recommending an admonishment shall be forwarded to staff counsel and the designated reviewer for review. If staff counsel does not return the report to the grievance committee to remedy a defect therein, or if the designated reviewer does not present the same to the disciplinary review committee for action by the board, the report shall then be served on the respondent by bar counsel.
(n) Rejection of Admonishment. The order of admonishment shall become final unless rejected by the respondent within 15 days after service upon the respondent. If rejected by the respondent, the report shall be referred to bar counsel and referee for trial on complaint of minor misconduct to be prepared by bar counsel as in the case of a finding of probable cause.
(o) Recommendation of Diversion to Remedial Programs. A grievance committee may recommend, as an alternative to issuing a finding of minor misconduct or no probable cause with a letter of advice, diversion of the disciplinary case to a practice and professionalism enhancement program as provided elsewhere in these rules. A respondent may reject the diversion recommendation in the same manner as provided in the rules applicable to rejection of findings of minor misconduct. In the event that a respondent rejects a recommendation of diversion, the matter shall be returned to the committee for further proceedings.
(p) Preparation, Review, and Filing of Complaint. When a grievance committee formal complaint is not referred to the disciplinary review committee, or returned to the grievance committee, staff counsel shall sign the complaint and file the same in the Supreme Court of Florida, serve a copy on the respondent, and request the Supreme Court of Florida to assign a referee to try the cause. If probable cause is found by the board, bar counsel will prepare the formal complaint.

RULE 3-7.6. PROCEDURES BEFORE A REFEREE
(a) Referees. The chief justice shall have the power to appoint referees to try disciplinary cases and to delegate to a chief judge of a judicial circuit the power to appoint referees for duty in the chief judge's circuit. Such appointees shall ordinarily be active county or circuit judges, but the chief justice may appoint retired judges.
(b) Trial by Referee. When a finding has been made by a grievance committee *673 or by the board that there is cause to believe that a member of The Florida Bar is guilty of misconduct justifying disciplinary action, and the formal complaint based on such finding of probable cause has been assigned by the chief justice for trial before a referee, the proceeding thereafter shall be an adversary proceeding that shall be conducted as hereinafter set forth.
(c) Pretrial Conference. Within 60 days of the order assigning the case to the referee, the referee shall conduct a pretrial conference. The purpose of the conference is to set a schedule for the proceedings, including discovery deadlines and a final hearing date. The referee shall enter a written order in the proceedings reflecting the schedule determined at the conference.
(d) Venue. The trial shall be held in the county in which an alleged offense occurred or in the county where the respondent resides or practices law or last practiced law in Florida, whichever shall be designated by the Supreme Court of Florida; provided, however, that if the respondent is not a resident of Florida and if the alleged offense is not committed in Florida, the trial shall be held in a county designated by the chief justice.
(e) Style of Proceedings. All proceedings instituted by The Florida Bar shall be styled "The Florida Bar, Complainant, v. (name of respondent), Respondent," and "In The Supreme Court of Florida (Before a Referee)."
(f) Nature of Proceedings.
(1) Administrative in Character. A disciplinary proceeding is neither civil nor criminal but is a quasi-judicial administrative proceeding. The Florida Rules of Civil Procedure apply except as otherwise provided in this rule.
(2) Discovery. Discovery shall be available to the parties in accordance with the Florida Rules of Civil Procedure.
(g) Bar Counsel. Bar counsel shall make such investigation as is necessary and shall prepare and prosecute with utmost diligence any case assigned.
(h) Pleadings. Pleadings may be informal and shall comply with the following requirements:
(1) Complaint; Consolidation and Severance.
(A) Filing. The complaint shall be filed in the Supreme Court of Florida.
(B) Content. The complaint shall set forth the particular act or acts of conduct for which the attorney is sought to be disciplined.
(C) Joinder of Charges and Respondents; Severance. A complaint may embrace any number of charges against 1 or more respondents, and charges may be against any 1 or any number of respondents; but a severance may be granted by the referee when the ends of justice require it.
(2) Answer and Motion. The respondent shall answer the complaint and, as a part thereof or by separate motion, may challenge only the sufficiency of the complaint and the jurisdiction of the forum. All other defenses shall be incorporated in the respondent's answer. The answer may invoke any proper privilege, immunity, or disability available to the respondent. All pleadings of the respondent must be filed within 20 days of service of a copy of the complaint.
(3) Reply. If the respondent's answer shall contain any new matter or affirmative defense, a reply thereto may be filed within 10 days of the date of service of a copy upon bar counsel, but *674 failure to file such a reply shall not prejudice The Florida Bar. All affirmative allegations in the respondent's answer shall be considered as denied by The Florida Bar.
(4) Disposition of Motions. Hearings upon motions may be deferred until the final hearing, and, whenever heard, rulings thereon may be reserved until termination of the final hearing.
(5) Filing and Service of Pleadings.
(A) Prior to Appointment of Referee. Any pleadings filed in a case prior to appointment of a referee shall be filed with the Supreme Court of Florida and shall bear a certificate of service showing parties upon whom service of copies has been made. On appointment of referee, the Supreme Court of Florida shall notify the parties of such appointment and forward all pleadings filed with the court to the referee for action.
(B) After Appointment of Referee. All pleadings, motions, notices, and orders filed after appointment of a referee shall be filed with the referee and shall bear a certificate of service showing service of a copy on staff counsel and bar counsel of The Florida Bar and on all interested parties to the proceedings.
(6) Amendment. Pleadings may be amended by order of the referee, and a reasonable time shall be given within which to respond thereto.
(7) Expediting the Trial. If it shall be made to appear that the date of final hearing should be expedited in the public interest, the referee may, in the referee's discretion, shorten the time for filing pleadings and the notice requirements as provided in this rule.
(8) Disqualification of Referee. Upon motion of either party, a referee may be disqualified from service in the same manner and to the same extent that a trial judge may be disqualified under existing law from acting in a judicial capacity. In the event of disqualification, the chief justice shall appoint a successor.
(i) Notice of Final Hearing. The cause may be set down for trial by either party or the referee upon not less than 10 days' notice. The trial shall be held as soon as possible following the expiration of 10 days from the filing of the respondent's answer, or if no answer is filed, then from the date when such answer is due.
(j) The Respondent. Unless the respondent claims a privilege or right properly available under applicable federal or state law, the respondent may be called as a witness by The Florida Bar to make specific and complete disclosure of all matters material to the issues. When the respondent is subpoenaed to appear and give testimony or to produce books, papers, or documents and refuses to answer or to produce such books, papers, or documents, or, having been duly sworn to testify, refuses to answer any proper question, the respondent may be cited for contempt of the court.
(k) Complaining Witness. The complaining witness is not a party to the disciplinary proceeding, and shall have no rights other than those of any other witness. However, unless it is found to be impractical due to unreasonable delay or other good cause, and after the complaining witness has testified during the case in chief, the referee may grant the complaining witness the right to be present at any hearing when the respondent is also present. A complaining witness may be called upon to testify and produce evidence as any other witness. Neither unwillingness nor neglect of the complaining witness to cooperate, nor settlement, compromise, or *675 restitution will excuse failure to complete any trial. The complaining witness shall have no right to appeal.
(l) Parol Evidence. Evidence other than that contained in a written attorney-client contract may not be used in proceedings conducted under the Rules Regulating The Florida Bar to vary the terms of that contract, except competent evidence other than that contained in a written fee contract may be used only if necessary to resolve issues of excessive fees or excessive costs.
(m) Referee's Report.
(1) Contents of Report. Within 30 days after the conclusion of a trial before a referee or 10 days after the referee receives the transcripts of all hearings, whichever is later, or within such extended period of time as may be allowed by the chief justice for good cause shown, the referee shall make a report and enter it as part of the record, but failure to enter the report in the time prescribed shall not deprive the referee of jurisdiction. The referee's report shall include:
(A) a finding of fact as to each item of misconduct of which the respondent is charged, which findings of fact shall enjoy the same presumption of correctness as the judgment of the trier of fact in a civil proceeding;
(B) recommendations as to whether the respondent should be found guilty of misconduct justifying disciplinary measures;
(C) recommendations as to the disciplinary measures to be applied;
(D) a statement of any past disciplinary measures as to the respondent that are on record with the executive director of The Florida Bar or that otherwise become known to the referee through evidence properly admitted by the referee during the course of the proceedings (after a finding of guilt, all evidence of prior disciplinary measures may be offered by bar counsel subject to appropriate objection or explanation by respondent); and
(E) a statement of costs incurred and recommendations as to the manner in which such costs should be taxed.
(2) Filing. The referee's report and record of proceedings shall in all cases be transmitted together to the Supreme Court of Florida. Copies of the report shall be served on the parties including staff counsel. The referee shall serve a copy of the record on bar counsel with the report. Bar counsel will make a copy of the record, as furnished, available to other parties on request and payment of the actual costs of reproduction.
(n) The Record.
(1) Recording of Testimony. All hearings at which testimony is presented shall be attended by a court reporter who shall record all testimony. Transcripts of such testimony are not required to be filed in the matter, unless requested by a party, who shall pay the cost of transcription directly, or ordered by the referee, in which case the costs thereof are subject to assessment as elsewhere provided in these rules.
(2) Contents. The record shall include all items properly filed in the cause including pleadings, recorded testimony, if transcribed, exhibits in evidence, and the report of the referee.
(o) Plea of Guilty by Respondent. At any time during the progress of disciplinary proceedings, a respondent may tender a plea of guilty.
(1) Before Filing of Complaint. If the plea is tendered before filing of a complaint by staff counsel, such plea *676 shall be tendered in writing to the grievance committee or bar counsel.
(2) After Filing of Complaint. If the complaint has been filed against the respondent, the respondent may enter a plea of guilty thereto by filing the same in writing with the referee to whom the cause has been assigned for trial. Such referee shall take such testimony thereto as may be advised, following which the referee will enter a report as otherwise provided.
(3) Unconditional. An unconditional plea of guilty shall not preclude review as to disciplinary measures imposed.
(4) Procedure. Except as herein provided, all procedure in relation to disposition of the cause on pleas of guilty shall be as elsewhere provided in these rules.
(p) Cost of Review or Reproduction.
(1) The charge for reproduction, when photocopying or other reproduction is performed by the bar, for the purposes of these rules shall be as determined and published annually by the executive director. In addition to reproduction charges, the bar may charge a reasonable fee incident to a request to review disciplinary records or for research into the records of disciplinary proceedings and identification of documents to be reproduced.
(2) When the bar is requested to reproduce documents that are voluminous or is requested to produce transcripts in the possession of the bar, the bar may decline to reproduce the documents in the offices of the bar and shall inform the requesting person of the following options:
(A) purchase of the transcripts from the court reporter service that produced them;
(B) purchase of the documents from the third party from whom the bar received them; or
(C) designation of a commercial photocopy service to which the bar shall deliver the original documents to be copied, at the requesting party's expense, provided the photocopy service agrees to preserve and return the original documents and not to release them to any person without the bar's consent.
(q) Costs.
(1) Taxable Costs. Taxable costs of the proceedings shall include only:
(A) investigative costs, including travel and out-of-pocket expenses;
(B) court reporters' fees;
(C) copy costs;
(D) telephone charges;
(E) fees for translation services;
(F) witness expenses, including travel and out-of-pocket expenses;
(G) travel and out-of-pocket expenses of the referee;
(H) travel and out-of-pocket expenses of counsel in the proceedings, including of the respondent if acting as counsel; and
(I) an administrative fee in the amount of $1250 when costs are assessed in favor of the bar.
(2) Discretion of Referee. The referee shall have discretion to award costs and, absent an abuse of discretion, the referee's award shall not be reversed.
(3) Assessment of Bar Costs. When the bar is successful, in whole or in part, the referee may assess the bar's costs against the respondent unless it is shown that the costs of the bar were unnecessary, excessive, or improperly authenticated.

*677 (4) Assessment of Respondent's Costs. When the bar is unsuccessful in the prosecution of a particular matter, the referee may assess the respondent's costs against the bar in the event that there was no justiciable issue of either law or fact raised by the bar.

Court Comment
A comprehensive referee's report under subdivision (m) is beneficial to a reviewing court so that the court need not make assumptions about the referee's intent or return the report to the referee for clarification. The referee's report should list and address each issue in the case and cite to available authority for the referee's recommendations concerning guilt and discipline.

RULE 3-7.9 CONSENT JUDGMENT
(a) Before Formal Complaint is Filed. If before a formal complaint is filed a respondent states a desire to plead guilty, staffbar counsel shall consult established board guidelines for discipline and confer with the designated reviewer. If staffbar counsel or the designated reviewer rejects the proposed consent judgment, the matter shall not be referred to the board of governors. If staffbar counsel and the designated reviewer approve the proposed consent judgment, the respondent shall be advised that staffbar counsel and the designated reviewer will recommend approval of the respondent's written plea, and the matter shall be placed on the agenda of the board of governors for its review. If the board of governors concurs in the consent judgment, bar counsel shall notify the respondent and file all necessary pleadings to secure approval of the plea. If a proposed consent judgment is rejected, bar counsel shall prepare and file a complaint as provided elsewhere in these rules.
(b) After Filing of Formal Complaint. If a respondent states a desire to plead guilty to a formal complaint that has been filed, staff counsel shall consult established board guidelines for discipline and confer with the designated reviewer. If staff counsel or the designated reviewer rejects the proposed consent judgment, the plea shall not be filed with the referee. If staff counsel and the designated reviewer approve the proposed consent judgment, the respondent shall be advised that staff counsel and the designated reviewer will recommend approval of the respondent's written plea and the consent judgment shall be filed with the referee. If the referee accepts the consent judgment, the referee shall enter a report and file same with the court as provided elsewhere in these rules. If the referee rejects the consent judgment, the matter shall proceed as provided in this chapter.
(c) Approval of Consent Judgments. Acceptance of any proposed consent judgment shall be conditioned on final approval by the Supreme Court of Florida, and the court's order will recite the disciplinary charges against the respondent.
(d) Content of Conditional Pleas. All conditional pleas shall show clearly by reference or otherwise the disciplinary offenses to which the plea is made.
(e) Authority of Staff Counsel Effect of Pleas on Certification. Staff counsel has no authority to commit the bar on any consent judgment not previously approved as provided in this rule. In negotiating consent judgments with a respondent or in recommending acceptance, rejection, or offer of a tendered consent judgment, staff counsel and designated reviewer shall consider and express a recommendation on whether the consent judgment shall include revocation of certification if held by the attorney and restrictions to be placed on recertification in such areas. When *678 certification revocation is agreed to in a consent judgment, the revocation and any conditions on recertification will be reported to the legal specialization and education director for recording purposes.

RULE 3-7.10 REINSTATEMENT AND READMISSION PROCEDURES
(a) Reinstatement; Applicability. An attorney who has been suspended or placed on the inactive list for incapacity not related to misconduct may be reinstated to membership in The Florida Bar pursuant to this rule. The proceedings under this rule are not applicable to suspension for nonpayment of membership fees.
(b) Petitions; Form and Contents.
(1) Filing. The original petition for reinstatement and 1 copy thereof shall be in writing, verified by the petitioner, and addressed to and filed with the Supreme Court of Florida. A copy shall be served on Staff Counsel, The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida XXXXX-XXXX.
(2) Form and Exhibits. The petition shall be in such form and shall be accompanied by such exhibits as provided for elsewhere in this rule. The information required concerning the petitioner may include any or all of the following matters in addition to such other matters as may be reasonably required to determine the fitness of the petitioner to resume the practice of law: criminal and civil judgments,; disciplinary judgments,; copies of income tax returns together with consents to secure original returns,; occupation during suspension and information in connection therewith,; financial statements,; and statement of restitution of funds that were the subject matter of disciplinary proceedings. In cases seeking reinstatement from incapacity, the petition shall also include copies of all pleadings in the matter leading to placement on the inactive list and all such other matters as may be reasonably required to demonstrate the character and fitness of the petitioner to resume the practice of law.
(c) Deposit for Cost. The petition shall be accompanied by proof of a deposit paid to The Florida Bar in such amount as the board of governors shall prescribe to ensure payment of reasonable costs of the proceedings, as provided elsewhere in this rule.
(d) Reference of Petition For Hearing. The chief justice shall refer the petition for reinstatement to a referee for hearing; provided, however, that no such reference shall be made until evidence is submitted showing that all costs assessed against the petitioner in all disciplinary or incapacity proceedings have been paid and restitution has been made.
(e) Bar Counsel. When a petition for reinstatement is filed, the board of governors or staff counsel, if authorized by the board of governors, may appoint bar counsel to represent The Florida Bar in the proceeding. The duties of such attorneys shall be to appear at the hearings and to prepare and present to the referee evidence that, in the opinion of the referee or such attorneys, should be considered in passing upon the petition.
(f) Determination of Fitness by Referee Hearing. The referee to whom the petition for reinstatement is referred shall conduct the hearing as a trial, in the same manner, to the extent practical, as provided elsewhere in these rules. The matter to decide shall be the fitness of the petitioner to resume the practice of law. In determining the fitness of the petitioner to resume the practice of law, the referee shall consider whether the petitioner has engaged in any disqualifying conduct, the *679 character and fitness of the petitioner, and whether the petitioner has been rehabilitated, as further described in this subdivision. All conduct engaged in after the date of admission to The Florida Bar shall be relevant in proceedings under this rule.
(1) Disqualifying Conduct. A record manifesting a deficiency in the honesty, trustworthiness, diligence, or reliability of a petitioner may constitute a basis for denial of reinstatement. The following shall be considered as disqualifying conduct:
(A) unlawful conduct;
(B) academic misconduct;
(C) making or procuring any false or misleading statement or omission of relevant information, including any false or misleading statement or omission on any application requiring a showing of good moral character;
(D) misconduct in employment;
(E) acts involving dishonesty, fraud, deceit, or misrepresentation;
(F) abuse of legal process;
(G) financial irresponsibility;
(H) neglect of professional obligations;
(I) violation of an order of a court;
(J) evidence of mental or emotional instability;
(K) evidence of drug or alcohol dependency;
(L) denial of admission to the bar in another jurisdiction on character and fitness grounds;
(M) disciplinary action by a lawyer disciplinary agency or other professional disciplinary agency of any jurisdiction; and
(N) any other conduct that reflects adversely upon the character or fitness of the applicant.
(2) Determination of Character and Fitness. In addition to other factors in making this determination, the following factors should be considered in assigning weight and significance to prior conduct:
(A) age at the time of the conduct;
(B) recency of the conduct;
(C) reliability of the information concerning the conduct;
(D) seriousness of the conduct;
(E) factors underlying the conduct;
(F) cumulative effect of the conduct or information;
(G) evidence of rehabilitation;
(H) positive social contributions since the conduct;
(I) candor in the discipline and reinstatement processes; and
(J) materiality of any omissions or misrepresentations.
(3) Elements of Rehabilitation. Any petitioner for reinstatement from discipline for prior misconduct shall be required to produce clear and convincing evidence of such rehabilitation including, but not limited to, the following elements:
(A) strict compliance with the specific conditions of any disciplinary, judicial, administrative, or other order, where applicable;
(B) unimpeachable character and moral standing in the community;
(C) good reputation for professional ability, where applicable;
(D) lack of malice and ill feeling toward those who by duty were compelled to bring about the disciplinary, judicial, administrative, or other proceeding;
(E) personal assurances, supported by corroborating evidence, of a desire *680 and intention to conduct one's self in an exemplary fashion in the future;
(F) restitution of funds or property, where applicable;
(G) positive action showing rehabilitation by such things as a person's occupation, religion, or community or civic service.
Merely showing that an individual is now living as and doing those things that should be done throughout life, although necessary to prove rehabilitation, does not prove that the individual has undertaken a useful and constructive place in society. The requirement of positive action is appropriate for persons seeking reinstatement to the bar as well as for applicants for admission to the bar because service to one's community is an essential obligation of members of the bar.
(g) Hearing; Notice; Evidence.
(1) Notice. The referee to whom the petition for reinstatement is referred shall fix a time and place for hearing, and notice thereof shall be given at least 10 days prior to the hearing to the petitioner, to attorneys representing The Florida Bar, and to such other persons as may be designated by the referee to whom the petition is referred.
(2) Appearance. Any persons to whom notice is given, any other interested persons, or any local bar association may appear before the referee in support of or in opposition to the petition at any time or times fixed for hearings thereon.
(3) Failure of Petitioner to be Examined. For the failure of the petitioner to submit to examination as a witness pursuant to notice given, the referee shall dismiss the petition for reinstatement unless good cause is shown for such failure.
(4) Summary Procedure. If after the completion of discovery bar counsel is unable to discover any evidence on which denial of reinstatement may be based and if no other person provides same, bar counsel may, with the approval of the designated reviewer and staff counsel, stipulate to the issue of reinstatement, including conditions thereon. The stipulation shall include a statement of costs as provided elsewhere in these Rules Regulating The Florida Bar.
(5) Evidence of Treatment or Counseling for Dependency or Other Medical Reasons. If the petitioner has sought or received treatment or counseling for chemical or alcohol dependency or for other medical reasons that relate to the petitioner's fitness to practice law, the petitioner shall waive confidentiality of such treatment or counseling for purposes of evaluation of the petitioner's fitness. The provisions of rule 3-7.1(d) are applicable to information or records disclosed under this subdivision.
(h) Prompt Hearing; Report. The referee to whom a petition for reinstatement has been referred by the chief justice shall proceed to a prompt hearing, at the conclusion of which the referee shall make and file with the Supreme Court of Florida a report that shall include the findings of fact and a recommendation as to whether the petitioner is qualified to resume the practice of law. The referee shall file the report and record in the Supreme Court of Florida and shall serve a copy of the report and record on bar counsel and a copy of the report only on all other parties. Bar counsel shall make a copy of the record, as furnished, available to other parties upon request and payment of actual costs of reproduction.
(i) Review. Review of referee reports in reinstatement proceedings shall be in accordance with rule 3-7.7.
*681 (j) Recommendation of Referee and Judgment of the Court. If the petitioner is found unfit to resume the practice of law, the petition shall be dismissed. If the petitioner is found fit to resume the practice of law, the referee shall enter a report recommending, and the court may enter an order of, reinstatement of the petitioner in The Florida Bar; provided, however, that the reinstatement may be conditioned upon the payment of all or part of the costs of the proceeding and upon the making of partial or complete restitution to parties harmed by the petitioner's misconduct that led to the petitioner's suspension of membership in The Florida Bar or conduct that led to the petitioner's incapacity; and further provided, however, if suspension or incapacity of the petitioner has continued for more than 3 years, the reinstatement may be conditioned upon the furnishing of such proof of competency as may be required by the judgment in the discretion of the Supreme Court of Florida, which proof may include certification by the Florida Board of Bar Examiners of the successful completion of an examination for admission to The Florida Bar subsequent to the date of the suspension or incapacity.
(k) Successive Petitions. No petition for reinstatement shall be filed within 1 year following an adverse judgment upon a petition for reinstatement filed by or on behalf of the same person. In cases of incapacity no petition for reinstatement shall be filed within 6 months following an adverse judgment under this rule.
(l) Petitions for Reinstatement to Membership in Good Standing.
(1) Availability. Petitions for reinstatement under this rule are available to members placed on the inactive list for incapacity not related to misconduct and suspended members of the bar when the disciplinary judgment conditions their reinstatement upon a showing of compliance with specified conditions.
(2) Style of Petition. Petitions shall be styled in the Supreme Court of Florida and an original and 1 copy filed therewith. A copy shall be served on Staff Counsel, The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida XXXXX-XXXX.
(3) Contents of Petition. The petition shall be verified by the petitioner and shall be accompanied by a written authorization to the District Director of the Internal Revenue Service, authorizing the furnishing of certified copies of the petitioner's tax returns for the past 5 years or since admission to the bar, whichever is greater. The authorization shall be furnished on a separate sheet. The petition shall have attached as an exhibit a true copy of all disciplinary judgments previously entered against the petitioner. It shall also include the petitioner's statement concerning the following:
(A) name, age, residence, address, and number and relation of dependents of the petitioner;
(B) the conduct, offense, or misconduct upon which the suspension or incapacity was based, together with the date of such suspension or incapacity;
(C) the names and addresses of all complaining witnesses in any disciplinary proceedings that resulted in suspension; and the name and address of the referee or judge who heard such disciplinary proceedings or of the trial judge, complaining witnesses, and prosecuting attorney, if suspension was based upon conviction of a felony or misdemeanor involving moral turpitude;

*682 (D) the nature of the petitioner's occupation in detail since suspension or incapacity, with names and addresses of all partners, associates in business, and employers, if any, and dates and duration of all such relations and employments;
(E) a statement showing the approximate monthly earnings and other income of the petitioner and the sources from which all such earnings and income were derived during said period;
(F) a statement showing all residences maintained during said period, with names and addresses of landlords, if any;
(G) a statement showing all financial obligations of the petitioner including but not limited to amounts claimed, unpaid, or owing to the Florida Bar Clients' Security Fund or former clients at the date of filing of the petition, together with the names and addresses of all creditors;
(H) a statement of restitution made for any and all obligations to all former clients and the Florida Bar Clients' Security Fund and the source and amount of funds used for this purpose;
(I) a statement showing dates, general nature, and ultimate disposition of every matter involving the arrest or prosecution of the petitioner during said period for any crime, whether felony or misdemeanor, together with the names and addresses of complaining witnesses, prosecuting attorneys, and trial judges;
(J) a statement as to whether any applications were made during said period for a license requiring proof of good character for its procurement; and, as to each such application, the date and the name and address of the authority to whom it was addressed and the disposition thereof;
(K) a statement of any procedure or inquiry, during said period, covering the petitioner's standing as a member of any profession or organization, or holder of any license or office, that involved the censure, removal, suspension, revocation of license, or discipline of the petitioner; and, as to each, the dates, facts, and the disposition thereof and the name and address of the authority in possession of the record thereof;
(L) a statement as to whether any charges of fraud were made or claimed against the petitioner during said period, whether formal or informal, together with the dates and names and addresses of persons making such charges;
(M) a concise statement of facts claimed to justify reinstatement to The Florida Bar;
(N) a statement showing the dates, general nature, and final disposition of every civil action wherein the petitioner was either a party plaintiff or defendant, together with dates of filing of complaints, titles of courts and causes, and the names and addresses of all parties and of the trial judge or judges, and names and addresses of all witnesses who testified in said action or actions; and
(O) a statement showing what amounts, if any, of the costs assessed against the accused attorney in the prior disciplinary proceedings against the petitioner have been paid by the petitioner and the source and amount of funds used for this purpose.
(4) Comments on Petition. Upon the appointment of a referee and bar counsel, copies of the petition shall be *683 furnished by the bar counsel to local board members, local grievance committees, and to such other persons as are mentioned in this rule. Persons will be asked toor groups that wish to respond shall direct their comments to bar counsel. The proceedings and finding of the referee shall relate to those matters described in this rule and also to those matters tending to show the petitioner's rehabilitation, present fitness to resume the practice of law, and the effect of such proposed reinstatement upon the administration of justice and purity of the courts and confidence of the public in the profession.
(5) Costs Deposit. The petition shall be accompanied by a deposit for costs of $500.
(m) Costs.
(1) Taxable Costs. Taxable costs of the proceedings shall include only:
(A) investigative costs, including travel and out-of-pocket expenses;
(B) court reporters' fees;
(C) copy costs;
(D) telephone charges;
(E) fees for translation services;
(F) witness expenses, including travel and out-of-pocket expenses;
(G) travel and out-of-pocket expenses of the referee;
(H) travel and out-of-pocket expenses of counsel in the proceedings, including the petitioner if acting as counsel; and
(I) an administrative fee in the amount of $1250 when costs are assessed in favor of the bar.
(2) Discretion of Referee. The referee shall have discretion to award costs and absent an abuse of discretion the referee's award shall not be reversed.
(3) Assessment of Bar Costs. The costs incurred by the bar in any reinstatement case may be assessed against the petitioner unless it is shown that the costs were unnecessary, excessive, or improperly authenticated.
(4) Assessment of Petitioner's Costs. The referee may assess the petitioner's costs against the bar in the event that there was no justiciable issue of either law or fact raised by the bar unless it is shown that the costs were unnecessary, excessive, or improperly authenticated.
(n) Readmission; Applicability. A former member who has been disbarred, disbarred on consent, or whose petition for disciplinary resignation has been accepted may be admitted again only upon full compliance with the rules and regulations governing admission to the bar. No application for readmission following disbarment, disbarment on consent, or disciplinary resignation may be tendered until such time as all restitution and disciplinary costs as may have been ordered or assessed have been paid together with any interest accrued.
(1) Readmission After Disbarment. Except as might be otherwise provided in these rules, no application for admission may be tendered within 5 years after the date of disbarment or such longer period of time as the court might determine in the disbarment order. An order of disbarment that states the disbarment is permanent shall preclude readmission to The Florida Bar.
(2) Readmission After Disciplinary Resignation. In the case of a disciplinary resignation, no readmission application may be filed until 3 years after the date of the order of the Supreme Court of Florida that accepted such disciplinary resignation or such additional time as the attorney may have stated in a *684 petition for disciplinary resignation. No application for readmission may be filed until all costs in disciplinary cases that were dismissed because of the disciplinary resignation have been paid by the applicant for readmission. If an attorney's petition for disciplinary resignation states that it is without leave to apply for readmission, such condition shall preclude any readmission.

RULE 3-7.11 GENERAL RULES OF PROCEDURE
(a) Time is Directory. Except as provided herein, the time intervals required are directory only and are not jurisdictional. Failure to observe such directory intervals may result in contempt of the agency having jurisdiction or of the Supreme Court of Florida, but will not prejudice the offending party except where so provided.
(b) Process. Every member of The Florida Bar is charged with notifying The Florida Bar of a change of mailing address or military status. Mailing of registered or certified papers or notices prescribed in these rules to the last mailing address of an attorney as shown by the official records in the office of the executive director of The Florida Bar shall be sufficient notice and service unless this court shall direct otherwise. Every attorney of another state who is permitted to practice for the purpose of a specific case before a court of record of this state may be served by registered or certified mail addressed to said attorney in care of the Florida attorney who was associated or appeared with the attorney in the specific case for which the out-of-state attorney was permitted to practice or addressed to said attorney at any address listed by the attorney in the pleadings in such case.
Provided, however, when a person is represented by counsel service of process and notices shall be directed to counsel.
(c) Notice in Lieu of Process. Every member of The Florida Bar is within the jurisdiction of the Supreme Court of Florida and its agencies under these rules, and service of process is not required to obtain jurisdiction over respondents in disciplinary proceedings; but due process requires the giving of reasonable notice and such shall be effective by the service of the complaint upon the respondent by mailing a copy thereof by registered or certified mail return receipt requested to the last-known address of the respondent according to the records of The Florida Bar or such later address as may be known to the person effecting the service.
When the respondent is represented by counsel in the matter, due process is satisfied by the service of the complaint upon the respondent's counsel by mailing a copy thereof by registered or certified mail return receipt requested to the last known address of the respondent's counsel according to the records of The Florida Bar or such later address as may be known to the person effecting the service.
(d) Subpoenas. Subpoenas for the attendance of witnesses and the production of documentary evidence other than before a circuit court shall be issued as follows:
(1) Referees. Subpoenas for the attendance of witnesses and production of documentary evidence before a referee shall be issued by the referee and shall be served in the manner provided by law for the service of process or by an investigator employed by The Florida Bar.
(2) Grievance Committees. Subpoenas for the attendance of witnesses and the production of documentary evidence shall be issued by the chair or vice-chair of a grievance committee in pursuance of an investigation authorized by the *685 committee. Such subpoenas may be served by any member of such committee, by an investigator employed by The Florida Bar, or in the manner provided by law for the service of process.
(3) Bar Counsel Investigations. Subpoenas for the attendance of witnesses and the production of documentary evidence before bar counsel when same is conducting an initial investigation shall be issued by the chair or vice chair of a grievance committee to which the matter will be assigned, if appropriate. Such subpoenas may be served by an investigator employed by The Florida Bar or in the manner provided by law for the service of process.
(4) After Grievance Committee Action, But Before Appointment of Referee. Subpoenas for the attendance of witnesses and the production of documentary evidence before bar counsel when same is conducting further investigation after action by a grievance committee, but before appointment of a referee, shall be issued by the chair or vice chair of the grievance committee to which the matter was assigned. Such subpoenas may be served by an investigator employed by The Florida Bar or in the manner provided by law for the service of process.
(5) Board of Governors. Subpoenas for the attendance of witnesses and the production of documentary evidence before the board of governors shall be issued by the executive director and shall be served by an investigator employed by The Florida Bar or in the manner provided by law for the service of process.
(6) Confidential Proceedings. If the proceeding is confidential, a subpoena shall not name the respondent but shall style the proceeding as "Confidential Proceeding by The Florida Bar under the Rules of Discipline."
(7) Contempt. Any persons who without adequate excuse fail to obey such a subpoena served upon them may be cited for contempt of this court in the manner provided by this rule.
(8) Assistance to Other Lawyer Disciplinary Jurisdictions. Upon receipt of a subpoena certified to be duly issued under the rules or laws of another lawyer disciplinary jurisdiction, the executive director may issue a subpoena directing a person domiciled or found within the state of Florida to give testimony and/or produce documents or other things for use in the other lawyer disciplinary proceedings as directed in the subpoena of the other jurisdiction. The practice and procedure applicable to subpoenas issued under this subdivision shall be that of the other jurisdiction, except that:
(A) the testimony or production shall be only in the county wherein the person resides or is employed, or as otherwise fixed by the executive director for good cause shown; and
(B) compliance with any subpoena issued pursuant to this subdivision and contempt for failure in this respect shall be sought as elsewhere provided in these rules.
(e) Oath of Witness. Every witness in every proceeding under these rules shall be sworn to tell the truth. Violation of this oath shall be an act of contempt of this court.
(f) Contempt. If an When a disciplinary agency other than a circuit court, as defined elsewhere in these rules, shall finds that a person is in contempt under these rules, such person shallmay be cited for contempt in the following manner, except that a respondent in a disciplinary proceeding may be cited for contempt by petition *686 for contempt filed and heard in the Supreme Court of Florida:
(1) Petition for Contempt and Order to Show Cause. The agency shall direct bar counsel, or chair of the agency if there is no bar counsel, serving in the matter in which the contempt occurs, to present to the circuit court having jurisdiction, a petition to hold the person in contempt of this court. When a person is found in contempt by a disciplinary agency, bar counsel shall file a petition for contempt and order to show cause with the Supreme Court of Florida.
(2) Appellate Review.A judgment in such contempt proceedings may be appealed by either party in the manner provided in the rule on appellate review of disciplinary proceedings under these rules except that a copy of the petition for review shall not be filed with the clerk of the circuit court, and the record shall be forwarded to the Supreme Court of Florida by the judge or the agency possessing the same. Order to Show Cause. On review of a petition for contempt and order to show cause, the supreme court may issue an order directing the person to show cause why such person should not be held in contempt and appropriate sanctions imposed. The order of the supreme court shall fix a time for a response.
(3) Failure to Respond to Order to Show Cause. Upon failure to timely respond to an order to show cause, the matters alleged in the petition shall be deemed admitted and the supreme court may enter a judgment of contempt and impose appropriate sanctions. Failure to respond may be an additional basis on which a judgment of contempt may be entered and sanctions imposed.
(4) Reply of The Florida Bar. When a timely response to an order to show cause is filed, The Florida Bar shall have 10 days, or such other time as the supreme court may order, from the date of filing in which to file a reply.
(5) Supreme Court Action. After expiration of the time to respond to an order to show cause and no response is timely filed, or after the reply of The Florida Bar has been filed, or the time therefore has expired without such filing, the supreme court shall review the matter and issue an appropriate judgment. Such judgment may include any sanction that a court may impose for contempt and, if the person found in contempt is a member of The Florida Bar, may include any disciplinary sanction authorized under these rules.
If the supreme court requires factual findings, the supreme court may direct appointment of a referee as elsewhere provided in these rules. Proceedings for contempt referred to a referee shall be processed in the same manner as disciplinary proceedings under these rules, including but not limited to the procedures provided therein for conditional guilty pleas for consent judgments.
(g) Testimony of Witnesses; Contempt. Unless the respondent claims a privilege or right properly available under applicable law, the respondent or any other person who is subpoenaed to appear and give testimony or produce books, papers, or documents and who refuses to appear or produce such books, papers, or documents or who, having been duly sworn to testify, refuses to answer any proper question may be cited for contempt of this court.
(hg) Court Reporters. Court reporters who are employees of The Florida Bar may be appointed to report any disciplinary proceeding. If the respondent attorney objects at least 48 hours in advance of the matter to be recorded, an independent *687 contract reporter may be retained. Reasonable costs for independent court reporter service mayshall be taxed to a respondent for payment to The Florida Bar.
(ih) Disqualification as Trier and Attorney for Respondent Due to Conflict.
(1) Grievance Committee Members, Members of the Board of Governors, and Employees of The Florida Bar. No grievance committee member, member of the board of governors, or employee of The Florida Bar shall represent a party other than The Florida Bar in disciplinary proceedings authorized under these rules.
(2) Former Grievance Committee Members, Former Board Members, and Former Employees. No former member of a grievance committee, former member of the board of governors, or former employee of The Florida Bar shall represent any party other than The Florida Bar in disciplinary proceedings authorized under these rules if personally involved to any degree in the matter while a member of the grievance committee, the board of governors, or while an employee of The Florida Bar.
A former member of the board of governors, former member of any grievance committee, or former employee of The Florida Bar who did not participate personally in any way in the investigation or prosecution of the matter or in any related matter in which the attorney seeks to be a representative, and who did not serve in a supervisory capacity over such investigation or prosecution, shall not represent any party except The Florida Bar for 1 year after such service without the express consent of the board.
(3) Partners, Associates, Employers, or Employees of the Firms of Grievance Committee Members or Board of Governors Members Precluded From Representing Parties Other Than The Florida Bar. Members of the firms of grievance committee members or board members shall not represent any party other than The Florida Bar in disciplinary proceedings authorized under these rules without the express consent of the board.
(4) Partners, Associates, Employers, or Employees of the Firms of Former Grievance Committee Members or Former Board of Governors Members Precluded From Representing Parties Other Than The Florida Bar. Attorneys in the firms of former board members or former grievance committee members shall not represent any party other than The Florida Bar in disciplinary proceedings authorized under these rules for 1 year after the former member's service without the express consent of the board.

RULE 3-7.12 DISCIPLINARY RESIGNATION FROM THE FLORIDA BAR
If a disciplinary agency is investigating the conduct of an attorney, or if such an agency has recommended probable cause, then disciplinary proceedings shall be deemed to be pending and a petition for disciplinary resignation may be filed pursuant to this rule. Disciplinary resignation is the functional equivalent of disbarment in that both sanctions terminate the license and privilege to practice law and both require readmission to practice under the Rules of the Supreme Court Relating to Admissions to the Bar. An attorney may seek disciplinary resignation from The Florida Bar during the progress of disciplinary proceedings in the following manner:
(a) Petition for Disciplinary Resignation. The petition for disciplinary resignation *688 shall be styled "The Florida Bar v. (respondent's name)," titled "Petition for Disciplinary Resignation," filed with the Supreme Court of Florida and contain a statement of all past and pending disciplinary actions and criminal proceedings against the petitioner. Such statement shall describe the charges made or those under investigation for professional misconduct, results of past proceedings, and the status of pending investigations and proceedings. The petition shall state whether it is with or without leave to reapply for readmission to the bar. A copy of the petition shall be served upon the executive director of The Florida Bar.
(b) Judgment. Within 60 days after filing and service of the petition, The Florida Bar may file with the Supreme Court of Florida its response to the petition either supporting or opposing the petition for disciplinary resignation. A copy of the response shall be served upon the petitioner. The Supreme Court of Florida shall consider the petition, any response thereto, and the charges against the petitioner. If it has been shown by the petitioner in a proper and competent manner that the public interest will not be adversely affected by the granting of the petition and that such will neither adversely affect the integrity of the courts nor hinder the administration of justice nor the confidence of the public in the legal profession, the Supreme Court of Florida shall enter an appropriate judgment granting disciplinary resignation; otherwise, the petition shall be denied. If the judgment grants the disciplinary resignation, the judgment may require that the disciplinary resignation be subject to appropriate conditions. Such conditions may include, but not be limited to, requiring the petitioner to submit to a full audit of all client trust accounts, executing a financial affidavit attesting to current personal and professional financial circumstances, and maintaining a current mailing address for a stated period of time.
(c) Delay of Disciplinary Proceedings. The filing of a petition for disciplinary resignation shall not stay the progress of the disciplinary proceedings without the approval of the board or, if a referee has been appointed and evidence has been taken, then without the approval of the referee.
(d) Dismissal of Pending Disciplinary Cases. If disciplinary resignation is accepted under this rule, such disciplinary resignation shall serve to dismiss all pending disciplinary cases.
(e) Costs of Pending Disciplinary Cases. The judgment of the court granting disciplinary resignation may impose a judgment for the costs expended by The Florida Bar in all pending disciplinary cases against the respondent. Such costs shall be of the types and amounts as authorized elsewhere in these Rules Regulating The Florida Bar.

RULE 4-1.5 FEES AND COSTS FOR LEGAL SERVICES
(a) Illegal, Prohibited, or Clearly Excessive Fees and Costs. An attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee or cost, or a fee generated by employment that was obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar. A fee or cost is clearly excessive when:
(1) after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee or the cost exceeds a reasonable fee or cost for services provided to such a degree as to constitute clear overreaching *689 or an unconscionable demand by the attorney; or
(2) the fee or cost is sought or secured by the attorney by means of intentional misrepresentation or fraud upon the client, a nonclient party, or any court, as to either entitlement to, or amount of, the fee.
(b) Factors to Be Considered in Determining Reasonable Fee and Costs.
(1) Factors to be considered as guides in determining a reasonable fee include:
(A) the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(B) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
(C) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;
(D) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;
(E) the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;
(F) the nature and length of the professional relationship with the client;
(G) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and
(H) whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client's ability to pay rested to any significant degree on the outcome of the representation.
(2) Factors to be considered as guides in determining reasonable costs include:
(A) the nature and extent of the disclosure made to the client about the costs;
(B) whether a specific agreement exists between the lawyer and client as to the costs a client is expected to pay and how a cost is calculated that is charged to a client;
(C) the actual amount charged by third party providers of services to the attorney;
(D) whether specific costs can be identified and allocated to an individual client or a reasonable basis exists to estimate the costs charged;
(E) the reasonable charges for providing in-house service to a client if the cost is an in-house charge for services; and
(F) the relationship and past course of conduct between the lawyer and the client.
All costs are subject to the test of reasonableness set forth in subdivision (a) above. When the parties have a written contract in which the method is established for charging costs, the costs charged thereunder shall be presumed reasonable.
(c) Consideration of All Factors. In determining a reasonable fee, the time devoted to the representation and customary rate of fee need not be the sole or controlling factors. All factors set forth in this rule should be considered, and may be applied, in justification of a fee higher or lower than that which would result from *690 application of only the time and rate factors.
(d) Enforceability of Fee Contracts. Contracts or agreements for attorney's fees between attorney and client will ordinarily be enforceable according to the terms of such contracts or agreements, unless found to be illegal, obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar, prohibited by this rule, or clearly excessive as defined by this rule.
(e) Duty to Communicate Basis or Rate of Fee or Costs to Client. When the lawyer has not regularly represented the client, the basis or rate of the fee and costs shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.
The fact that a contract may not be in accord with these rules is an issue between the attorney and client and a matter of professional ethics, but is not the proper basis for an action or defense by an opposing party when fee-shifting litigation is involved.
(f) Contingent Fees. As to contingent fees:
(1) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by subdivision (f)(3) or by law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial, or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.
(2) Every lawyer who accepts a retainer or enters into an agreement, express or implied, for compensation for services rendered or to be rendered in any action, claim, or proceeding whereby the lawyer's compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only where such fee arrangement is reduced to a written contract, signed by the client, and by a lawyer for the lawyer or for the law firm representing the client. No lawyer or firm may participate in the fee without the consent of the client in writing. Each participating lawyer or law firm shall sign the contract with the client and shall agree to assume joint legal responsibility to the client for the performance of the services in question as if each were partners of the other lawyer or law firm involved. The client shall be furnished with a copy of the signed contract and any subsequent notices or consents. All provisions of this rule shall apply to such fee contracts.
(3) A lawyer shall not enter into an arrangement for, charge, or collect:
(A) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof; or
(B) a contingent fee for representing a defendant in a criminal case.
(4) A lawyer who enters into an arrangement for, charges, or collects any fee in an action or claim for personal injury or for property damages or for *691 death or loss of services resulting from personal injuries based upon tortious conduct of another, including products liability claims, whereby the compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only under the following requirements:
(A) The contract shall contain the following provisions:
(i) "The undersigned client has, before signing this contract, received and read the statement of client's rights and understands each of the rights set forth therein. The undersigned client has signed the statement and received a signed copy to refer to while being represented by the undersigned attorney(s)."
(ii) "This contract may be cancelled by written notification to the attorney at any time within 3 business days of the date the contract was signed, as shown below, and if cancelled the client shall not be obligated to pay any fees to the attorney for the work performed during that time. If the attorney has advanced funds to others in representation of the client, the attorney is entitled to be reimbursed for such amounts as the attorney has reasonably advanced on behalf of the client."
(B) The contract for representation of a client in a matter set forth in subdivision (f)(4) may provide for a contingent fee arrangement as agreed upon by the client and the lawyer, except as limited by the following provisions:
(i) Without prior court approval as specified below, any contingent fee that exceeds the following standards shall be presumed, unless rebutted, to be clearly excessive:
a. Before the filing of an answer or the demand for appointment of arbitrators or, if no answer is filed or no demand for appointment of arbitrators is made, the expiration of the time period provided for such action:
1. 33 1/3% of any recovery up to $1 million; plus
2. 30% of any portion of the recovery between $1 million and $2 million; plus
3. 20% of any portion of the recovery exceeding $2 million.
b. After the filing of an answer or the demand for appointment of arbitrators or, if no answer is filed or no demand for appointment of arbitrators is made, the expiration of the time period provided for such action, through the entry of judgment:
1. 40% of any recovery up to $1 million; plus
2. 30% of any portion of the recovery between $1 million and $2 million; plus
3. 20% of any portion of the recovery exceeding $2 million.
c. If all defendants admit liability at the time of filing their answers and request a trial only on damages:
1. 33 1/3% of any recovery up to $1 million; plus
2. 20% of any portion of the recovery between $1 million and $2 million; plus
3. 15% of any portion of the recovery exceeding $2 million.
d. An additional 5% of any recovery after institution of any appellate *692 proceeding is filed or post-judgment relief or action is required for recovery on the judgment.
(ii) If any client is unable to obtain an attorney of the client's choice because of the limitations set forth in subdivision (f)(4)(B)(i), the client may petition the court in which the matter would be filed, if litigation is necessary, or if such court will not accept jurisdiction for the fee division, the circuit court wherein the cause of action arose, for approval of any fee contract between the client and an attorney of the client's choosing. Such authorization shall be given if the court determines the client has a complete understanding of the client's rights and the terms of the proposed contract. The application for authorization of such a contract can be filed as a separate proceeding before suit or simultaneously with the filing of a complaint. Proceedings thereon may occur before service on the defendant and this aspect of the file may be sealed. A petition under this subdivision shall contain a certificate showing service on the client and, if the petition is denied, a copy of the petition and order denying the petition shall be served on The Florida Bar in Tallahassee by the member of the bar who filed the petition. Authorization of such a contract shall not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive under subdivisions (a) and (b).
(C) Before a lawyer enters into a contingent fee contract for representation of a client in a matter set forth in this rule, the lawyer shall provide the client with a copy of the statement of client's rights and shall afford the client a full and complete opportunity to understand each of the rights as set forth therein. A copy of the statement, signed by both the client and the lawyer, shall be given to the client to retain and the lawyer shall keep a copy in the client's file. The statement shall be retained by the lawyer with the written fee contract and closing statement under the same conditions and requirements as subdivision (f)(5).
(D) As to lawyers not in the same firm, a division of any fee within subdivision (f)(4) shall be on the following basis:
(i) To the lawyer assuming primary responsibility for the legal services on behalf of the client, a minimum of 75% of the total fee.
(ii) To the lawyer assuming secondary responsibility for the legal services on behalf of the client, a maximum of 25% of the total fee. Any fee in excess of 25% shall be presumed to be clearly excessive.
(iii) The 25% limitation shall not apply to those cases in which 2 or more lawyers or firms accept substantially equal active participation in the providing of legal services. In such circumstances counsel shall apply to the court in which the matter would be filed, if litigation is necessary, or if such court will not accept jurisdiction for the fee division, the circuit court wherein the cause of action arose, for authorization of the fee division in excess of 25%, based upon a sworn petition signed by all counsel that shall disclose in detail those services to be performed. The application for authorization of such a contract may be filed as a separate proceeding before suit or simultaneously with *693 the filing of a complaint, or within 10 days of execution of a contract for division of fees when new counsel is engaged. Proceedings thereon may occur before service of process on any party and this aspect of the file may be sealed. Authorization of such contract shall not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive. An application under this subdivision shall contain a certificate showing service on the client and, if the application is denied, a copy of the petition and order denying the petition shall be served on The Florida Bar in Tallahassee by the member of the bar who filed the petition. Counsel may proceed with representation of the client pending court approval.
(iv) The percentages required by this subdivision shall be applicable after deduction of any fee payable to separate counsel retained especially for appellate purposes.
(5) In the event there is a recovery, upon the conclusion of the representation, the lawyer shall prepare a closing statement reflecting an itemization of all costs and expenses, together with the amount of fee received by each participating lawyer or law firm. A copy of the closing statement shall be executed by all participating lawyers, as well as the client, and each shall receive a copy. Each participating lawyer shall retain a copy of the written fee contract and closing statement for 6 years after execution of the closing statement. Any contingent fee contract and closing statement shall be available for inspection at reasonable times by the client, by any other person upon judicial order, or by the appropriate disciplinary agency.
(6) In cases in which the client is to receive a recovery that will be paid to the client on a future structured or periodic basis, the contingent fee percentage shall be calculated only on the cost of the structured verdict or settlement or, if the cost is unknown, on the present money value of the structured verdict or settlement, whichever is less. If the damages and the fee are to be paid out over the long term future schedule, this limitation does not apply. No attorney may negotiate separately with the defendant for that attorney's fee in a structured verdict or settlement when separate negotiations would place the attorney in a position of conflict.
(g) Division of Fees Between Lawyers in Different Firms. Subject to the provisions of subdivision (f)(4)(D), a division of fee between lawyers who are not in the same firm may be made only if the total fee is reasonable and:
(1) the division is in proportion to the services performed by each lawyer; or
(2) by written agreement with the client:
(A) each lawyer assumes joint legal responsibility for the representation and agrees to be available for consultation with the client; and
(B) the agreement fully discloses that a division of fees will be made and the basis upon which the division of fees will be made.
(h) Credit Plans. A lawyer or law firm may accept payment under a credit plan. No higher fee shall be charged and no additional charge shall be imposed by reason of a lawyer's or law firm's participation in a credit plan.

*694 STATEMENT OF CLIENT'S RIGHTS FOR CONTINGENCY FEES
Before you, the prospective client, arrange a contingent fee agreement with a lawyer, you should understand this statement of your rights as a client. This statement is not a part of the actual contract between you and your lawyer, but, as a prospective client, you should be aware of these rights:
1. There is no legal requirement that a lawyer charge a client a set fee or a percentage of money recovered in a case. You, the client, have the right to talk with your lawyer about the proposed fee and to bargain about the rate or percentage as in any other contract. If you do not reach an agreement with 1 lawyer you may talk with other lawyers.
2. Any contingent fee contract must be in writing and you have 3 business days to reconsider the contract. You may cancel the contract without any reason if you notify your lawyer in writing within 3 business days of signing the contract. If you withdraw from the contract within the first 3 business days, you do not owe the lawyer a fee although you may be responsible for the lawyer's actual costs during that time. If your lawyer begins to represent you, your lawyer may not withdraw from the case without giving you notice, delivering necessary papers to you, and allowing you time to employ another lawyer. Often, your lawyer must obtain court approval before withdrawing from a case. If you discharge your lawyer without good cause after the 3-day period, you may have to pay a fee for work the lawyer has done.
3. Before hiring a lawyer, you, the client, have the right to know about the lawyer's education, training, and experience. If you ask, the lawyer should tell you specifically about the lawyer's actual experience dealing with cases similar to yours. If you ask, the lawyer should provide information about special training or knowledge and give you this information in writing if you request it.
4. Before signing a contingent fee contract with you, a lawyer must advise you whether the lawyer intends to handle your case alone or whether other lawyers will be helping with the case. If your lawyer intends to refer the case to other lawyers, the lawyer should tell you what kind of fee sharing arrangement will be made with the other lawyers. If lawyers from different law firms will represent you, at least 1 lawyer from each law firm must sign the contingent fee contract.
5. If your lawyer intends to refer your case to another lawyer or counsel with other lawyers, your lawyer should tell you about that at the beginning. If your lawyer takes the case and later decides to refer it to another lawyer or to associate with other lawyers, you should sign a new contract that includes the new lawyers. You, the client, also have the right to consult with each lawyer working on your case and each lawyer is legally responsible to represent your interests and is legally responsible for the acts of the other lawyers involved in the case.
6. You, the client, have the right to know in advance how you will need to pay the expenses and the legal fees at the end of the case. If you pay a deposit in advance for costs, you may ask reasonable questions about how the money will be or has been spent and how much of it remains unspent. Your lawyer should give a reasonable estimate about future necessary costs. If your lawyer agrees to lend or advance you money to prepare or research the case, you have the right to know periodically how much money your lawyer has spent on your behalf. You also have the right to decide, after consulting with your lawyer, how much money is to *695 be spent to prepare a case. If you pay the expenses, you have the right to decide how much to spend. Your lawyer should also inform you whether the fee will be based on the gross amount recovered or on the amount recovered minus the costs.
7. You, the client, have the right to be told by your lawyer about possible adverse consequences if you lose the case. Those adverse consequences might include money that you might have to pay to your lawyer for costs and liability you might have for attorney's fees, costs, and expenses to the other side.
8. You, the client, have the right to receive and approve a closing statement at the end of the case before you pay any money. The statement must list all of the financial details of the entire case, including the amount recovered, all expenses, and a precise statement of your lawyer's fee. Until you approve the closing statement your lawyer cannot pay any money to anyone, including you, without an appropriate order of the court. You also have the right to have every lawyer or law firm working on your case sign this closing statement.
9. You, the client, have the right to ask your lawyer at reasonable intervals how the case is progressing and to have these questions answered to the best of your lawyer's ability.
10. You, the client, have the right to make the final decision regarding settlement of a case. Your lawyer must notify you of all offers of settlement before and after the trial. Offers during the trial must be immediately communicated and you should consult with your lawyer regarding whether to accept a settlement. However, you must make the final decision to accept or reject a settlement.
11. If at any time you, the client, believe that your lawyer has charged an excessive or illegal fee, you have the right to report the matter to The Florida Bar, the agency that oversees the practice and behavior of all lawyers in Florida. For information on how to reach The Florida Bar, call 850/561-5600, or contact the local bar association. Any disagreement between you and your lawyer about a fee can be taken to court and you may wish to hire another lawyer to help you resolve this disagreement. Usually fee disputes must be handled in a separate lawsuit, unless your fee contract provides for arbitration. You can request, but may not require, that a provision for arbitration (under chapter 682, Florida Statutes, or under the fee arbitration rule of the Rules Regulating The Florida Bar) be included in your fee contract.
____________________
Client Signature
_____________________
Date
_____________________
Attorney Signature
_____________________
Date

Comment

Basies or rate of fees and costs
When the lawyer has regularly represented a client, they ordinarily will have evolved an understanding concerning the basis or rate of the fee. The conduct of the lawyer and client in prior relationships is relevant when analyzing the requirements of this rule. In a new client-lawyer relationship, however, an understanding as to the fee should be promptly established. It is not necessary to recite all the factors that underlie the basis of the fee but only those that are directly involved in its computation. *696 It is sufficient, for example, to state the basic rate is an hourly charge or a fixed amount or an estimated amount, or to identify the factors that may be taken into account in finally fixing the fee. Although hourly billing or a fixed fee may be the most common bases for computing fees in an area of practice, these may not be the only bases for computing fees. A lawyer should, where appropriate, discuss alternative billing methods with the client. When developments occur during the representation that render an earlier estimate substantially inaccurate, a revised estimate should be provided to the client. A written statement concerning the fee reduces the possibility of misunderstanding. Furnishing the client with a simple memorandum or a copy of the lawyer's customary fee schedule is sufficient if the basis or rate of the fee is set forth.
General overhead should be accounted for in a lawyer's fee, whether the lawyer charges hourly, flat, or contingent fees. Filing fees, transcription, and the like should be charged to the client at the actual amount paid by the lawyer. A lawyer may agree with the client to charge a reasonable amount for in-house costs or services. In-house costs include items such as copying, faxing, long distance telephone, and computerized research. In-house services include paralegal services, investigative services, accounting services, and courier services. The lawyer should sufficiently communicate with the client regarding the costs charged to the client so that the client understands the amount of costs being charged or the method for calculation of those costs. Costs appearing in sufficient detail on closing statements and approved by the parties to the transaction should meet the requirements of this rule.
Rule 4-1.8(e) should be consulted regarding a lawyer's providing financial assistance to a client in connection with litigation.

Terms of payment
A lawyer may require advance payment of a fee but is obliged to return any unearned portion. See rule 4-1.16(d). A lawyer is not, however, required to return retainers that, pursuant to an agreement with a client, are not refundable. A lawyer may accept property in payment for services, such as an ownership interest in an enterprise, providing this does not involve acquisition of a proprietary interest in the cause of action or subject matter of the litigation contrary to rule 4-1.8(i). However, a fee paid in property instead of money may be subject to special scrutiny because it involves questions concerning both the value of the services and the lawyer's special knowledge of the value of the property.
An agreement may not be made whose terms might induce the lawyer improperly to curtail services for the client or perform them in a way contrary to the client's interest. For example, a lawyer should not enter into an agreement whereby services are to be provided only up to a stated amount when it is foreseeable that more extensive services probably will be required, unless the situation is adequately explained to the client. Otherwise, the client might have to bargain for further assistance in the midst of a proceeding or transaction. However, it is proper to define the extent of services in light of the client's ability to pay. A lawyer should not exploit a fee arrangement based primarily on hourly charges by using wasteful procedures. When there is doubt whether a contingent fee is consistent with the client's best interest, the lawyer should offer the client alternative bases for the fee and explain their implications. Applicable *697 law may impose limitations on contingent fees, such as a ceiling on the percentage.
Rule 4-1.5(f)(3) does not apply to lawyers seeking to obtain or enforce judgments for arrearages.

Contingent fee regulation
Subdivision (e) is intended to clarify that whether the lawyer's fee contract complies with these rules is a matter between the lawyer and client and an issue for professional disciplinary enforcement. The rules and subdivision (e) are not intended to be used as procedural weapons or defenses by others. Allowing opposing parties to assert noncompliance with these rules as a defense, including whether the fee is fixed or contingent, allows for potential inequity if the opposing party is allowed to escape responsibility for their actions solely through application of these rules.
Rule 4-1.5(f)(4) should not be construed to apply to actions or claims seeking property or other damages arising in the commercial litigation context.
Rule 4-1.5(f)(4)(B) is intended to apply only to contingent aspects of fee agreements. In the situation where a lawyer and client enter a contract for part noncontingent and part contingent attorney's fees, rule 4-1.5(f)(4)(B) should not be construed to apply to and prohibit or limit the noncontingent portion of the fee agreement. An attorney could properly charge and retain the noncontingent portion of the fee even if the matter was not successfully prosecuted or if the noncontingent portion of the fee exceeded the schedule set forth in rule 4-1.5(f)(4)(B). Rule 4-1.5(f)(4)(B) should, however, be construed to apply to any additional contingent portion of such a contract when considered together with earned noncontingent fees. Thus, under such a contract a lawyer may demand or collect only such additional contingent fees as would not cause the total fees to exceed the schedule set forth in rule 4-1.5(f)(4)(B).
The limitations in rule 4-1.5(f)(4)(B)(i)c are only to be applied in the case where all the defendants admit liability at the time they file their initial answer and the trial is only on the issue of the amount or extent of the loss or the extent of injury suffered by the client. If the trial involves not only the issue of damages but also such questions as proximate cause, affirmative defenses, seat belt defense, or other similar matters, the limitations are not to be applied because of the contingent nature of the case being left for resolution by the trier of fact.
Rule 4-1.5(f)(4)(B)(ii) provides the limitations set forth in subdivision (f)(4)(B)(i) may be waived by the client upon approval by the appropriate judge. This waiver provision may not be used to authorize a lawyer to charge a client a fee that would exceed rule 4-1.5(a) or (b). It is contemplated that this waiver provision will not be necessary except where the client wants to retain a particular lawyer to represent the client or the case involves complex, difficult, or novel questions of law or fact that would justify a contingent fee greater than the schedule but not a contingent fee that would exceed rule 4-1.5(b).
Upon a petition by a client, the trial court reviewing the waiver request must grant that request if the trial court finds the client: (a) understands the right to have the limitations in rule 4-1.5(f)(4)(B) applied in the specific matter; and (b) understands and approves the terms of the proposed contract. The consideration by the trial court of the waiver petition is not to be used as an opportunity for the court to inquire into the merits or details of the particular action or claim that is the subject of the contract.
*698 The proceedings before the trial court and the trial court's decision on a waiver request are to be confidential and not subject to discovery by any of the parties to the action or by any other individual or entity except The Florida Bar. However, terms of the contract approved by the trial court may be subject to discovery if the contract (without court approval) was subject to discovery under applicable case law or rules of evidence.
Rule 4-1.5(f)(6) prohibits a lawyer from charging the contingent fee percentage on the total, future value of a recovery being paid on a structured or periodic basis. This prohibition does not apply if the lawyer's fee is being paid over the same length of time as the schedule of payments to the client.
Contingent fees are prohibited in criminal and certain domestic relations matters. In domestic relations cases, fees that include a bonus provision or additional fee to be determined at a later time and based on results obtained have been held to be impermissible contingency fees and therefore subject to restitution and disciplinary sanction as elsewhere stated in these Rules Regulating The Florida Bar.
Fees that provide for a bonus or additional fees and that otherwise are not prohibited under the Rules Regulating The Florida Bar can be effective tools for structuring fees. For example, a fee contract calling for a flat fee and the payment of a bonus based on the amount of property retained or recovered in a general civil action is not prohibited by these rules. However, the bonus or additional fee must be stated clearly in amount or formula for calculation of the fee (basis or rate). Courts have held that unilateral bonus fees are unenforceable. The test of reasonableness and other requirements of this rule apply to permissible bonus fees.

Division of fee
A division of fee is a single billing to a client covering the fee of 2 or more lawyers who are not in the same firm. A division of fee facilitates association of more than 1 lawyer in a matter in which neither alone could serve the client as well, and most often is used when the fee is contingent and the division is between a referring lawyer and a trial specialist. Subject to the provisions of subdivision (f)(4)(D), subdivision (g) permits the lawyers to divide a fee on either the basis of the proportion of services they render or by agreement between the participating lawyers if all assume responsibility for the representation as a whole and the client is advised and does not object. It does require disclosure to the client of the share that each lawyer is to receive. Joint responsibility for the representation entails the obligations stated in rule 4-5.1 for purposes of the matter involved.

Disputes over fees
Since the fee arbitration rule (chapter 14) has been established by the bar to provide a procedure for resolution of fee disputes, the lawyer should conscientiously consider submitting to it. Where law prescribes a procedure for determining a lawyer's fee, for example, in representation of an executor or administrator, a class, or a person entitled to a reasonable fee as part of the measure of damages, the lawyer entitled to such a fee and a lawyer representing another party concerned with the fee should comply with the prescribed procedure.

Referral fees and practices
A secondary lawyer shall not be entitled to a fee greater than the limitation set forth in rule 4-1.5(f)(4)(D)(ii) merely because the lawyer agrees to do some or all of the following: (a) consults with the client; (b) answers interrogatories; (c) attends depositions; (d) reviews pleadings; *699 (e) attends the trial; or (f) assumes joint legal responsibility to the client. However, the provisions do not contemplate that a secondary lawyer who does more than the above is necessarily entitled to a larger percentage of the fee than that allowed by the limitation.
The provisions of rule 4-1.5(f)(4)(D)(iii) only apply where the participating lawyers have for purposes of the specific case established a co-counsel relationship. The need for court approval of a referral fee arrangement under rule 4-1.5(f)(4)(D)(iii) should only occur in a small percentage of cases arising under rule 4-1.5(f)(4) and usually occurs prior to the commencement of litigation or at the onset of the representation. However, in those cases in which litigation has been commenced or the representation has already begun, approval of the fee division should be sought within a reasonable period of time after the need for court approval of the fee division arises.
In determining if a co-counsel relationship exists, the court should look to see if the lawyers have established a special partnership agreement for the purpose of the specific case or matter. If such an agreement does exist, it must provide for a sharing of services or responsibility and the fee division is based upon a division of the services to be rendered or the responsibility assumed. It is contemplated that a co-counsel situation would exist where a division of responsibility is based upon, but not limited to, the following: (a) based upon geographic considerations, the lawyers agree to divide the legal work, responsibility, and representation in a convenient fashion. Such a situation would occur when different aspects of a case must be handled in different locations; (b) where the lawyers agree to divide the legal work and representation based upon their particular expertise in the substantive areas of law involved in the litigation; or (c) where the lawyers agree to divide the legal work and representation along established lines of division, such as liability and damages, causation and damages, or other similar factors.
The trial court's responsibility when reviewing an application for authorization of a fee division under rule 4-1.5(f)(4)(D)(iii) is to determine if a co-counsel relationship exists in that particular case. If the court determines a co-counsel relationship exists and authorizes the fee division requested, the court does not have any responsibility to review or approve the specific amount of the fee division agreed upon by the lawyers and the client.
Rule 4-1.5(f)(4)(D)(iv) applies to the situation where appellate counsel is retained during the trial of the case to assist with the appeal of the case. The percentages set forth in subdivision (f)(4)(D) are to be applicable after appellate counsel's fee is established. However, the effect should not be to impose an unreasonable fee on the client.

Credit Plans
Credit plans include credit cards. If a lawyer accepts payment from a credit plan for an advance of fees and costs, the amount must be held in trust in accordance with chapter 5, Rules Regulating The Florida Bar, and the lawyer must add the lawyer's own money to the trust account in an amount equal to the amount charged by the credit plan for doing business with the credit plan.

RULE 4-3.4 FAIRNESS TO OPPOSING PARTY AND COUNSEL
A lawyer shall not:
(a) unlawfully obstruct another party's access to evidence or otherwise unlawfully *700 alter, destroy, or conceal a document or other material that the lawyer knows or reasonably should know is relevant to a pending or a reasonably foreseeable proceeding; nor counsel or assist another person to do any such act.;
(b) fabricate evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness, except a lawyer may pay a witness reasonable expenses incurred by the witness in attending or testifying at proceedings; a reasonable, noncontingent fee for professional services of an expert witness; and reasonable compensation to reimburse a witness for the loss of compensation incurred by reason of preparing for, attending, or testifying at proceedings.;
(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.;
(d) in pretrial procedure, make a frivolous discovery request or intentionally fail to comply with a legally proper discovery request by an opposing party.;
(e) in trial, state a personal opinion about the credibility of a witness unless the statement is authorized by current rule or case law, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant, or the guilt or innocence of an accused.;
(f) request a person other than a client to refrain from voluntarily giving relevant information to another party unless:(1) the person is a relative or an employee or other agent of a client, and (2) it is reasonable to believe that the person's interests will not be adversely affected by refraining from giving such information.;
(g) present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter.; or
(h) present, participate in presenting, or threaten to present disciplinary charges under these rules solely to obtain an advantage in a civil matter.

Comment
The procedure of the adversary system contemplates that the evidence in a case is to be marshalled competitively by the contending parties. Fair competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improperly influencing witnesses, obstructive tactics in discovery procedure, and the like.
Documents and other items of evidence are often essential to establish a claim or defense. Subject to evidentiary privileges, the right of an opposing party, including the government, to obtain evidence through discovery or subpoena is an important procedural right. The exercise of that right can be frustrated if relevant material is altered, concealed, or destroyed. Applicable law in many jurisdictions makes it an offense to destroy material for the purpose of impairing its availability in a pending proceeding or one whose commencement can be foreseen. Falsifying evidence is also generally a criminal offense. Subdivision (a) applies to evidentiary material generally, including computerized information.
With regard to subdivision (b), it is not improper to pay a witness's expenses or to compensate an expert witness on terms permitted by law. The common law rule in most jurisdictions is that it is improper to pay an occurrence witness any fee for *701 testifying and that it is improper to pay an expert witness a contingent fee.
Previously, subdivision (e) also proscribed statements about the credibility of witnesses. However, in 2000, the Supreme Court of Florida entered an opinion in Murphy v. International Robotic Systems, Inc., 766 So.2d 1010 (Fla.2000), wherein the court allowed counsel in closing argument to call a witness a "liar" or to state that the witness "lied."
There the court stated: "First, it is not improper for counsel to state during closing argument that a witness `lied' or is a `liar,' provided such characterizations are supported by the record." Murphy, id., at 1028. Members of the bar are advised to check the status of the law in this area.
Subdivision (f) permits a lawyer to advise employees of a client to refrain from giving information to another party, for the employees may identify their interests with those of the client. See also rule 4-4.2.

RULE 4-5.4 PROFESSIONAL INDEPENDENCE OF A LAWYER
(a) Sharing Fees with Nonlawyers. A lawyer or law firm shall not share legal fees with a nonlawyer, except that:
(1) an agreement by a lawyer with the lawyer's firm, partner, or associate may provide for the payment of money, over a reasonable period of time after the lawyer's death, to the lawyer's estate or to 1 or more specified persons;
(2) a lawyer who undertakes to complete unfinished legal business of a deceased lawyer may pay to the estate of the deceased lawyer that proportion of the total compensation that fairly represents the services rendered by the deceased lawyer;
(3) a lawyer who purchases the practice of a deceased, disabled, or disappeared lawyer may, in accordance with the provisions of rule 4-1.17, pay to the estate or other legally authorized representative of that lawyer the agreed upon purchase price; and
(4) bonuses may be paid to nonlawyer employees for work performed, and may be based on their extraordinary efforts on a particular case or over a specified time period, provided that the. Bonus payments is shall not be based on the generation of cases or clients or business brought to the lawyer or law firm by the actions of the nonlawyer. and A lawyer shall not provide a bonus payment that is not calculated as a percentage of legal fees received by the lawyer or law firm.
(b) Qualified Pension Plans. A lawyer or law firm may include nonlawyer employees in a qualified pension, profit-sharing, or retirement plan, even though the lawyer's or law firm's contribution to the plan is based in whole or in part on a profit-sharing arrangement.
(c) Partnership with Nonlawyer. A lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law.
(d) Exercise of Independent Professional Judgment. A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services.
(e) Nonlawyer Ownership of Authorized Business Entity. A lawyer shall not practice with or in the form of a business entity authorized to practice law for a profit if:
(1) a nonlawyer owns any interest therein, except that a fiduciary representative of the estate of a lawyer may *702 hold the stock or interest of the lawyer for a reasonable time during administration; or
(2) a nonlawyer has the right to direct or control the professional judgment of a lawyer.

Comment
The provisions of this rule express traditional limitations on sharing fees. These limitations are to protect the lawyer's professional independence of judgment. Where someone other than the client pays the lawyer's fee or salary, or recommends employment of the lawyer, that arrangement does not modify the lawyer's obligation to the client. As stated in subdivision (c), such arrangements should not interfere with the lawyer's professional judgment.
The prohibition against sharing legal fees with nonlawyer employees is not intended to prohibit profit-sharing arrangements that are part of a qualified pension, profit-sharing, or retirement plan. Compensation plans, as opposed to retirement plans, may not be based on legal fees.

4-5.8 PROCEDURES FOR LAWYERS LEAVING LAW FIRMS

AND DISSOLUTION OF LAW FIRMS
(a) Contractual Relationship Between Law Firm and Clients. The contract for legal services creates the legal relationships between the client and law firm and between the client and individual members of the law firm, including the ownership of the files maintained by the lawyer or law firm. Nothing in these rules creates or defines those relationships.
(b) Client's Right to Counsel of Choice. Clients have the right to expect that they may choose counsel when legal services are required and, with few exceptions, nothing that lawyers and law firms do shall have any effect on the exercise of that right.
(c) Contact With Clients.
(1) Lawyers Leaving Law Firms. Absent a specific agreement otherwise, a lawyer who is leaving a law firm shall not unilaterally contact those clients of the law firm for purposes of notifying them about the anticipated departure or to solicit representation of the clients unless the lawyer has approached an authorized representative of the law firm and attempted to negotiate a joint communication to the clients concerning the lawyer leaving the law firm and bona fide negotiations have been unsuccessful.
(2) Dissolution of Law Firm. Absent a specific agreement otherwise, a lawyer involved in the dissolution of a law firm shall not unilaterally contact clients of the law firm unless, after bona fide negotiations, authorized members of the law firm have been unable to agree on a method to provide notice to clients.
(d) Form for Contact With Clients.
(1) Lawyers Leaving Law Firms. When a joint response has not been successfully negotiated, unilateral contact by individual members or the law firm shall give notice to clients that the lawyer is leaving the law firm and provide options to the clients to choose to remain a client of the law firm, to choose representation by the departing lawyer, or to choose representation by other lawyers or law firms.
(2) Dissolution of Law Firms. When a law firm is being dissolved and no procedure for contacting clients has been agreed upon, unilateral contact by members of the law firm shall give notice to clients that the firm is being dissolved and provide options to the clients to choose representation by any *703 member of the dissolving law firm, or representation by other lawyers or law firms.
(3) Liability for Fees and Costs. In all instances, notice to the client required under this rule shall provide information concerning potential liability for fees for legal services previously rendered, costs expended, and how any deposits for fees or costs will be handled. In addition, if appropriate, notice shall be given that reasonable charges may be imposed to provide a copy of any file to a successor lawyer.
(e) Nonresponsive Clients.
(1) Lawyers Leaving Law Firms. In the event a client fails to advise the lawyers and law firm of the client's intention in regard to who is to provide future legal services when a lawyer is leaving the firm, the client shall be considered as remaining a client of the firm until the client advises otherwise.
(2) Dissolution of Law Firms. In the event a client fails to advise the lawyers of the client's intention in regard to who is to provide future legal services when a law firm is dissolving, the client shall be considered as remaining a client of the lawyer who primarily provided the prior legal services on behalf of the firm until the client advises otherwise.

Comment
The current rule of law regarding ownership of client files is discussed in Donahue v. Vaughn, 721 So.2d 356 (Fla. 5th DCA 1998), and Dowda & Fields, P.A. v. Cobb, 452 So.2d 1140 (Fla. 5th DCA 1984). A lawyer leaving a law firm, when the law firm remains available to continue legal representation, has no right nor expectation to take client files without an agreement with the law firm to do so.
While clients have the right to choose counsel, such choice may implicate obligations. Those obligations may include a requirement to pay for legal services previously rendered and costs expended in connection with the representation as well as a reasonable fee for copying the client's file.
Whether individual members have any individual legal obligations to a client is a matter of contract law, tort law, or court rules that is outside the scope of rules governing lawyer conduct. Generally, individual lawyers have such obligations only if provided for in the contract for representation. Nothing in this rule or in the contract for representation may alter the ethical obligations that individual lawyers have to clients as provided elsewhere in these rules.
It is anticipated that in most instances a lawyer leaving a law firm and the law firm will engage in bona fide, good faith negotiations and craft a joint communication providing adequate information to the client so that the client may make a fully informed decision concerning future representation. In those instances in which bona fide negotiations are unsuccessful, unilateral communication may be made by the departing lawyer or the law firm. In such circumstances, great care should be taken to meet the obligation of adequate communication and for this reason the specific requirements of subdivisions (d)(1) & (3) are provided.
Most law firms have some written instrument creating the law firm and specifying procedures to be employed upon dissolution of the firm. However, when such an instrument does not exist or does not adequately provide for procedures in the event of dissolution, the provisions of this rule are provided so that dissolution of the law firm does not disproportionately affect client rights.
*704 As in instances of a lawyer departing a law firm, lawyers involved in the dissolution of law firms have a continuing obligation to provide adequate information to a client so that the client may make informed decisions concerning future representation.
The Florida Bar's Law Office Management Advisory Service has sample forms for notice to clients and sample partnership and other contracts that are available to members. The forms may be accessed on the bar's website, www.flabar.org, or by calling The Florida Bar headquarters in Tallahassee.
Lawyers involved in either a change in law firm composition or law firm dissolution may have duties to notify the court if the representation is in litigation. If the remaining law firm will continue the representation of the client, no notification of the change in firm composition to the court may be required, but such a notification may be advisable. If the departing lawyer will take over representation of the client, a motion for substitution of counsel or a motion by the firm to withdraw from the representation may be appropriate. If the departing lawyer and the law firm have made the appropriate request for the client to select either the departing lawyer or the law firm to continue the representation, but the client has not yet responded, the law firm should consider notifying the court of the change in firm composition, although under ordinary circumstances, absent an agreement to the contrary, the firm will continue the representation in the interim. If the departing lawyer and the law firm have agreed regarding who will continue handling the client's matters then, absent disagreement by the client, the agreement normally will determine whether the departing lawyer or the law firm will continue the representation.

RULE 4-7.7 EVALUATION OF ADVERTISEMENTS
(a) Filing and Advisory Opinion. Subject to the exemptions stated in rule 4-7.8, any lawyer who advertises services through any public media or through written communications sent in compliance with rule 4-7.4 or 4-7.6(c) shall file a copy of each such advertisement with the standing committee on advertising for evaluation of compliance with these rules. The copy shall be filed either prior to or concurrently with the lawyer's first dissemination of the advertisement or written communication and shall be accompanied by the information and fee specified in subdivision (b) of this rule. A lawyer may obtain an advisory opinion concerning the compliance of a contemplated advertisement or written communication in advance of disseminating the advertisement or communication by submitting the material and fee specified in subdivision (b) of this rule to the standing committee on advertising at least 15 days prior to such dissemination. If the committee finds that the advertisement complies with these rules, the lawyer's voluntary submission shall be deemed to satisfy the filing requirement set forth in this rule.
(b) Contents of Filing. A filing with the committee as required or permitted by subdivision (a) shall consist of:
(1) a copy of the advertisement or communication in the form or forms in which it is to be disseminated (e.g., videotapes, audiotapes, print media, photographs of outdoor advertising);
(2) a transcript, if the advertisement or communication is on videotape or audiotape;
(3) a sample envelope in which the written communication will be enclosed, if the communication is to be mailed;
(4) a statement listing all media in which the advertisement or communication *705 will appear, the anticipated frequency of use of the advertisement or communication in each medium in which it will appear, and the anticipated time period during which the advertisement or communication will be used; and
(5) a fee paid to The Florida Bar, in an amount of $100150 for submissions timely filed as provided in subdivision (a), or $250 for submissions not timely filed. This fee shall be used to offset the cost of evaluation and review of advertisements submitted under these rules and the cost of enforcing these rules.
(c) Evaluation of Advertisements. The committee shall evaluate all advertisements and written communications filed with it pursuant to this rule for compliance with the applicable rules set forth in this subchapter 4-7. The committee shall complete its evaluation within 15 days of receipt of a filing unless the committee determines that there is reasonable doubt that the advertisement or written communication is in compliance with the rules and that further examination is warranted but cannot be completed within the 15-day period, and so advises the filer within the 15-day period. In the latter event, the committee shall complete its review as promptly as the circumstances reasonably allow. If the committee does not send any communication to the filer within 15 days, the advertisement will be deemed approved.
(d) Substantiating Information. If requested to do so by the committee, the filing lawyer shall submit information to substantiate representations made or implied in that lawyer's advertisement or written communication.
(e) Notice of Noncompliance; Effect of Continued Use of Advertisement. When the committee determines that an advertisement or written communication is not in compliance with the applicable rules, the committee shall advise the lawyer that dissemination or continued dissemination of the advertisement or written communication may result in professional discipline.
(f) Committee Determination Not Binding; Evidence. A finding by the committee of either compliance or noncompliance shall not be binding in a grievance proceeding, but may be offered as evidence.
(g) Change of Circumstances; Refiling Requirement. If a change of circumstances occurring subsequent to the committee's evaluation of an advertisement or written communication raises a substantial possibility that the advertisement or communication has become false or misleading as a result of the change in circumstances, the lawyer shall promptly refile the advertisement or a modified advertisement with the committee along with an explanation of the change in circumstances and an additional fee set by the board of governors but not exceeding $100.
(h) Maintaining Copies of Advertisements. A copy or recording of an advertisement or written or recorded communication shall be submitted to the standing committee on advertising in accordance with the requirements of rule 4-7.7, and the lawyer shall retain a copy or recording for 3 years after its last dissemination along with a record of when and where it was used.

Comment
This rule has a dual purpose: to enhance the court's and the bar's ability to monitor advertising practices for the protection of the public and to assist members of the bar to conform their advertisements to the requirements of these rules. This rule gives lawyers the option of submitting their advertisements to the committee for *706 review prior to first use or submitting their advertisements at the time of first use. In either event, the committee will advise the filing lawyer in writing whether the advertisement appears to comply with the rules. The committee's opinion will be advisory only, but may be considered as evidence of a good faith effort to comply with these rules. A lawyer who wishes to be able to rely on the committee's opinion as demonstrating the lawyer's good faith effort to comply with these rules has the responsibility of supplying the committee with all information material to a determination of whether an advertisement is false or misleading.

RULE 4-8.1 BAR ADMISSION AND DISCIPLINARY MATTERS
An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
(a) knowingly make a false statement of material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by rule 4-1.6.; or
(c) commit an act that adversely reflects on the applicant's fitness to practice law. An applicant who commits such an act before admission, but which is discovered after admission, shall be subject to discipline under these rules.

Comment
The duty imposed by this rule extends to persons seeking admission to the bar as well as to lawyers. Hence, if a person makes a material false statement in connection with an application for admission, it may be the basis for subsequent disciplinary action if the person is admitted and in any event may be relevant in a subsequent admission application. The duty imposed by this rule applies to a lawyer's own admission or discipline as well as that of others. Thus, it is a separate professional offense for a lawyer to knowingly make a misrepresentation or omission in connection with a disciplinary investigation of the lawyer's own conduct. This rule also requires affirmative clarification of any misunderstanding on the part of the admissions or disciplinary authority of which the person involved becomes aware.
This rule is subject to the provisions of the fifth amendment of the United States Constitution and the corresponding provisions of the Florida Constitution. A person relying on such a provision in response to a question, however, should do so openly and not use the right of nondisclosure as a justification for failure to comply with this rule.
A lawyer representing an applicant for admission to the bar, or representing a lawyer who is the subject of a disciplinary inquiry or proceeding, is governed by the rules applicable to the client-lawyer relationship.
An applicant for admission may commit acts that adversely reflect on the applicant's fitness to practice law and which are discovered only after the applicant becomes a member of the bar. This rule provides a means to address such misconduct in the absence of such a provision in the Rules of the Supreme Court Relating to Admissions to the Bar.

RULE 4-8.4 MISCONDUCT
A lawyer shall not:
*707 (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation, except that it shall not be professional misconduct for a lawyer for a criminal law enforcement agency or regulatory agency to advise others about or to supervise another in an undercover investigation, unless prohibited by law or rule, and it shall not be professional misconduct for a lawyer employed in a capacity other than as a lawyer by a criminal law enforcement agency or regulatory agency to participate in an undercover investigation, unless prohibited by law or rule;
(d) engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, including, but not limited to, on account of race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, or physical characteristic;
(e) state or imply an ability to influence improperly a government agency or official;
(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law;
(g) fail to respond, in writing, to any official inquiry by bar counsel or a disciplinary agency, as defined elsewhere in these rules, when bar counsel or the agency is conducting an investigation into the lawyer's conduct. A written response shall be made:
(1) within 15 days of the date of the initial written investigative inquiry by bar counsel, grievance committee, or board of governors;
(2) within 10 days of the date of any follow-up written investigative inquiries by bar counsel, grievance committee, or board of governors;
(3) within the time stated in any subpoena issued under these Rules Regulating The Florida Bar (without additional time allowed for mailing);
(4) as provided in the Florida Rules of Civil Procedure or order of the referee in matters assigned to a referee; and
(5) as provided in the Florida Rules of Appellate Procedure or order of the Supreme Court of Florida for matters pending action by that court.
Except as stated otherwise herein or in the applicable rules, all times for response shall be calculated as provided elsewhere in these Rules Regulating The Florida Bar and may be extended or shortened by the inquirer upon good cause shown;
(h) willfully refuse, as determined by a court of competent jurisdiction, to timely pay a child support obligation; or
(i) engage in sexual conduct with a client or a representative of a client that exploits or adversely affects the interests of the client or the lawyer-client relationship including, but not limited to:
(1) requiring or demanding sexual relations with a client or a representative of a client incident to or as a condition of a legal representation;
(2) employing coercion, intimidation, or undue influence in entering into sexual relations with a client or a representative of a client; or

*708 (3) continuing to represent a client if the lawyer's sexual relations with the client or a representative of the client cause the lawyer to render incompetent representation.

Comment
Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving "moral turpitude." That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, or breach of trust or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.
A lawyer may refuse to comply with an obligation imposed by law upon a good faith belief that no valid obligation exists. The provisions of rule 4-1.2(d) concerning a good faith challenge to the validity, scope, meaning, or application of the law apply to challenges of legal regulation of the practice of law.
Subdivision (c) recognizes instances where lawyers in criminal law enforcement agencies or regulatory agencies advise others about or supervise others in undercover investigations, and provides an exception to allow the activity without the lawyer engaging in professional misconduct. The exception acknowledges current, acceptable practice of these agencies. Although the exception appears in this rule, it is also applicable to rules 4-4.1 and 4-4.3. However, nothing in the rule allows the lawyer to engage in such conduct if otherwise prohibited by law or rule.
Subdivision (d) of this rule proscribes conduct that is prejudicial to the administration of justice. Such proscription includes the prohibition against discriminatory conduct committed by a lawyer while performing duties in connection with the practice of law. The proscription extends to any characteristic or status that is not relevant to the proof of any legal or factual issue in dispute. Such conduct, when directed towards litigants, jurors, witnesses, court personnel, or other lawyers, whether based on race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, physical characteristic, or any other basis, subverts the administration of justice and undermines the public's confidence in our system of justice, as well as notions of equality. This subdivision does not prohibit a lawyer from representing a client as may be permitted by applicable law, such as, by way of example, representing a client accused of committing discriminatory conduct.
Lawyers holding public office assume legal responsibilities going beyond those of other citizens. A lawyer's abuse of public office can suggest an inability to fulfill the professional role of attorney. The same is true of abuse of positions of private trust such as trustee, executor, administrator, guardian, or agent and officer, director, or manager of a corporation or other organization.
A lawyer's obligation to respond to an inquiry by a disciplinary agency is stated *709 in subdivision (g) and rule 3-7.6(h)(2). While response is mandatory, the lawyer may deny the charges or assert any available privilege or immunity or interpose any disability that prevents disclosure of certain matter. A response containing a proper invocation thereof is sufficient under the Rules Regulating The Florida Bar. This obligation is necessary to ensure the proper and efficient operation of the disciplinary system.
Subdivision (h) of this rule was added to make consistent the treatment of attorneys who fail to pay child support with the treatment of other professionals who fail to pay child support, in accordance with the provisions of section 61.13015, Florida Statutes. That section provides for the suspension or denial of a professional license due to delinquent child support payments after all other available remedies for the collection of child support have been exhausted. Likewise, subdivision (h) of this rule should not be used as the primary means for collecting child support, but should be used only after all other available remedies for the collection of child support have been exhausted. Before a grievance may be filed or a grievance procedure initiated under this subdivision, the court that entered the child support order must first make a finding of willful refusal to pay. The child support obligation at issue under this rule includes both domestic (Florida) and out-of-state (URESA) child support obligations, as well as arrearages.
Subdivision (i) proscribes exploitation of the client and the lawyer-client relationship by means of commencement of sexual conduct. The lawyer-client relationship is grounded on mutual trust. A sexual relationship that exploits that trust compromises the lawyer-client relationship. For purposes of this subdivision, client means an individual, or a representative of the client, including but not limited to a duly authorized constituent of a corporate or other non-personal entity, and lawyer refers only to the lawyer(s) engaged in the legal representation and not other members of the law firm.

RULE 4-8.6 AUTHORIZED BUSINESS ENTITIES
(a) Authorized Business Entities. Lawyers may practice law in the form of professional service corporations, professional limited liability companies, sole proprietorships, general partnerships, or limited liability partnerships organized or qualified under applicable law. Such forms of practice are authorized business entities under these rules.
(b) Practice of Law Limited to Members of The Florida Bar. No authorized business entity may engage in the practice of law in the state of Florida or render advice under or interpretations of Florida law except through officers, directors, partners, managers, agents, or employees who are qualified to render legal services in this state.
(c) Qualifications of Managers, Directors and Officers. No person shall serve as a partner, manager, director, or executive officer of an authorized business entity and engage in the practice of law in Florida unless such person is legally qualified to render legal services in this state. For purposes of this rule the term "executive officer" shall include the president, vice-president, or any other officer who performs a policy-making function.
(d) Violation of Statute or Rule. A lawyer who, while acting as a shareholder, member, officer, director, partner, proprietor, manager, agent, or employee of an authorized business entity and engaged in the practice of law in Florida, violates or sanctions the violation of the authorized *710 business entity statutes or the Rules Regulating The Florida Bar shall be subject to disciplinary action.
(e) Disqualification of Shareholder, Member, Proprietor, or Partner; Severance of Financial Interests. Whenever a shareholder of a professional service corporation, a member of a professional limited liability company, proprietor, or partner in a limited liability partnership becomes legally disqualified to render legal services in this state, said shareholder, member, proprietor, or partner shall sever all employment with and financial interests in such authorized business entity immediately. For purposes of this rule the term "legally disqualified" shall not include suspension from the practice of law for a period of time less than 91 days. Severance of employment and financial interests required by this rule shall not preclude the shareholder, member, proprietor, or partner from receiving compensation based on legal fees generated for legal services performed during the time when the shareholder, member, proprietor, or partner was legally qualified to render legal services in this state. This provision shall not prohibit employment of a legally disqualified shareholder, member, proprietor, or partner in a position that does not render legal service nor payment to an existing profit sharing or pension plan to the extent permitted in rules 3-6.1 and 4-5.4(a)(3), or as required by applicable law.
(f) Cessation of Legal Services. Whenever all shareholders of a professional service corporation, or all members of a professional limited liability company, the proprietor of a solo practice, or all partners in a limited liability partnership become legally disqualified to render legal services in this state, the authorized business entity shall cease the rendition of legal services in Florida.
(g) Application of Statutory Provisions. Unless otherwise provided in this rule, each shareholder, member, proprietor, or partner of an authorized business entity shall possess all rights and benefits and shall be subject to all duties applicable to such shareholder, member, proprietor, or partner provided by the statutes pursuant to which the authorized business entity was organized or qualified.

Comment
In 1961 this court recognized the authority of the legislature to enact statutory provisions creating corporations, particularly professional service corporations. But this court also noted that "[e]nabling action by this Court is therefore an essential condition precedent to authorize members of The Florida Bar to qualify under and engage in the practice of their profession pursuant to The 1961 Act." In Re The Florida Bar, 133 So.2d 554, at 555 (Fla. 1961).
The same is true today, whatever the form of business entity created by legislative enactment. Hence, this rule is adopted to continue authorization for members of the bar to practice law in the form of a professional service corporation, a professional limited liability company, or a limited liability partnership. This rule also permits a member of the bar to practice law as a sole proprietor or as a member of a general partnership. These types of entities are collectively referred to as authorized business entities.

Limitation on rendering legal services
No person may render legal services on behalf of an authorized business entity unless that person is otherwise authorized to do so via membership in the bar or through a motion for leave to appear. Neither the adoption of this rule nor the statutory provisions alter this limitation.

*711 Employment by and financial interests in an authorized business entity
This rule and the statute require termination of employment of a shareholder, member, proprietor, or partner when same is "legally disqualified" to render legal services. The purpose of this provision is to prohibit compensation based on fees for legal services rendered at a time when the shareholder, member, proprietor, or partner cannot render the same type of services. Continued engagement in capacities other than rendering legal services with the same or similar compensation would allow circumvention of prohibitions of sharing legal fees with one not qualified to render legal services. Other rules prohibit the sharing of legal fees with nonlawyers and this rule continues the application of that type of prohibition. However, nothing in this rule or the statute prohibits payment to the disqualified shareholder, member, proprietor, or partner for legal services rendered while the shareholder, member, proprietor, or partner was qualified to render same, even though payment for the legal services is not received until the shareholder, member, proprietor, or partner is legally disqualified.
Similarly, this rule and the statute require the severance of "financial interests" of a legally disqualified shareholder, member, proprietor, or partner. The same reasons apply to severance of financial interests as those that apply to severance of employment. Other provisions of these rules proscribe limits on employment and the types of duties that a legally disqualified shareholder, member, proprietor, or partner may be assigned.
Practical application of the statute and this rule to the requirements of the practice of law mandates exclusion of short term, temporary removal of qualifications to render legal services. Hence, any suspension of less than 91 days, including membership fees delinquency suspensions, is excluded from the definition of the term. These temporary impediments to the practice of law are such that with the passage of time or the completion of ministerial acts, the member of the bar is automatically qualified to render legal services. Severe tax consequences would result from forced severance and subsequent reestablishment (upon reinstatement of qualifications) of all financial interests in these instances.
However, the exclusion of such suspensions from the definition of the term does not authorize the payment to the disqualified shareholder, member, proprietor, or partner of compensation based on fees for legal services rendered during the time when the shareholder, member, proprietor, or partner is not personally qualified to render such services. Continuing the employment of a legally disqualified shareholder, member, proprietor, or partner during the term of a suspension of less than 91 days requires the authorized business entity to take steps to avoid the practice of law by the legally disqualified shareholder, member, proprietor, or partner, the ability of the legally disqualified shareholder, member, proprietor, or partner to control the actions of members of the bar qualified to render legal services, and payment of compensation to the legally disqualified shareholder, member, proprietor, or partner based on legal services rendered while the legally disqualified shareholder, member, proprietor, or partner is not qualified to render them. Mere characterization of continued compensation, which is the same or similar to that the legally disqualified shareholder, member, proprietor, or partner received when qualified to render legal services, is not sufficient to satisfy the requirements of this rule.

*712 Profit sharing or pension plans
To the extent that applicable law requires continued payment to existing profit sharing or pension plans, nothing in this rule or the statute may abridge such payments. However, if permitted under applicable law the amount paid to the plan for a legally disqualified shareholder, member, proprietor, or partner shall not include payments based on legal services rendered while the legally disqualified shareholder, member, proprietor, or partner was not qualified to render legal services.

Interstate Practice
This rule permits members of The Florida Bar to engage in the practice of law with lawyers licensed to practice elsewhere in an authorized business entity organized under the laws of another jurisdiction and qualified under the laws of Florida (or vice-versa), but nothing herein is intended to affect the ability of non-members of The Florida Bar to practice law in Florida. See, e.g., The Florida Bar v. Savitt, 363 So.2d 559 (Fla.1978).
The terms qualified and legally disqualified are imported from the Professional Service Corporation Act (chapter 621, Florida Statutes).

RULE 6-3.5 STANDARDS FOR CERTIFICATION
(a) Standards for Certification. The minimum standards for certification are prescribed below. Each area of certification established under this chapter may contain higher or additional standards if approved by the Supreme Court of Florida.
(b) Eligibility for Application. A member in good standing of The Florida Bar who is currently engaged in the practice of law and who meets the area's standards may apply for certification. From the date the application is filed to the date the certificate is issued, the applicant must continue to practice law and remain a member in good standing of The Florida Bar. The certificate issued by the board of legal specialization and education shall state that the lawyer is a "Board Certified (area of certification) Lawyer."
(c) Minimum Requirements for Qualifying for Certification With Examination. Minimum requirements for qualifying for certification by examination are as follows:
(1) A minimum of 5 years substantially engaged in the practice of law. The "practice of law" means legal work performed primarily for purposes of rendering legal advice or representation. Service as a judge of any court of record shall be deemed to constitute the practice of law. Employment by the government of the United States, any state (including subdivisions of the state such as counties or municipalities), or the District of Columbia, and employment by a public or private corporation or other business shall be deemed to constitute the practice of law if the individual was required as a condition of employment to be a member of the bar of any state or the District of Columbia. If otherwise permitted in the particular standards for the area in which certification is sought, the practice of law in a foreign nation state, U.S. territory, or U.S. protectorate, or employment in a position that requires as a condition of employment that the employee be licensed to practice law in such foreign nation state, U.S. territory, or U.S. protectorate, shall be counted as up to, but no more than, 3 of the 5 years required for certification.
(2) A satisfactory showing of substantial involvement in the particular area for which certification is sought during 3 *713 of the last 5 years preceding the application for certification.
(3) A satisfactory showing of such continuing legal education in a particular field of law for which certification is sought as set by that area's standards but in no event less than 10 certification hours per year.
(4) Passing a written and/or oral examination applied uniformly to all applicants to demonstrate sufficient knowledge, skills, and proficiency in the area for which certification is sought and in the various areas relating to such field. The award of an LL.M. degree from an approved law school in the area for which certification is sought within 8 years of application may substitute as the written examination required in this subdivision if the area's standards so provide.
(5) Current certification by an approved organization in the area for which certification is sought within 5 years of filing an application may, at the option of the certification committee, substitute as partial equivalent credit, including the written examination required in subdivision (c)(4). Approval will be by the board of legal specialization and education following a positive or negative recommendation from the certification committee.
(6) Peer review shall be used to solicit information to assess competence in the specialty field and professionalism and ethics in the practice of law. To qualify for board certification, an applicant must be recognized as having achieved a level of competence indicating special knowledge, skills, and proficiency in handling the usual matters in the specialty field. The applicant shall also be evaluated as to character, ethics, and reputation for professionalism. An applicant otherwise qualified may be denied certification on the basis of peer review. Certification may also be withheld pending the outcome of any disciplinary complaint or malpractice action.
As part of the peer review process, the board of legal specialization and education and its area committees shall review an applicant's professionalism, ethics, and disciplinary record. Such review shall include both disciplinary complaints and malpractice actions. The process may also include solicitation of public input and independent inquiry apart from written references. Peer review is mandatory for all applicants and may not be eliminated by equivalents.
(d) Minimum Requirements for Qualification Without Examination. When certification without examination is available in an area, the minimum requirements for such certification are as follows:
(1) A minimum of 20 years in the practice on a full-time basis.
(2) A satisfactory showing of competence and substantial involvement in the particular area for which certification is sought during 5 of the last 10 years, including the year immediately preceding the application for certification. Substantial involvement in the practice particular area of law for the 1 year immediately preceding the application may be waived for good cause shown.
(3) A satisfactory showing of such continuing legal education in a particular field of law for which certification is sought as set by that area's standards but in no event less than 15 hours per year.
(4) Satisfactory peer review and professional ethics record in accordance with subdivision (c)(6).
(5) Certification without examination may be granted only:

*714 (A) to individuals who apply within 2 years after the date on which the particular area is approved by the Supreme Court of Florida; or
(B) as otherwise permitted in the particular standards for the area for which certification is sought.
(6) Payment of any fees required by the plan.

RULE 6-3.7. EMERITUS SPECIALIST STATUS
(a) Purpose. The purpose of emeritus specialist status is to recognize the past and continuing contribution of a certified lawyer in the advancement of the speciality area through related career activities that do not constitute the actual practice of law. For purposes of this rule, the "practice of law" means legal work performed for purposes of rendering legal services, advice, or representation.
(b) Applicability. An applicant who seeks emeritus specialist status shall:
(1) be currently board certified by The Florida Bar;
(2) be a member of The Florida Bar in good standing;
(3) no longer be engaged in the practice of law; and
(4) otherwise comply with the applicable rules and policies governing emeritus specialist status.
(c) Qualifications. To qualify for emeritus specialist status, a member shall:
(1) not engage in the active practice of law;
(2) maintain the required level of continuing legal education in the area of certification as provided in the area standards;
(32) demonstrate integrity and professionalism, and submit to peer review as required by the board of legal specialization and education;
(43) promptly report to the board of legal specialization and education any disciplinary complaints or malpractice actions filed against the member;
(54) file the annual audit and pay the annual fee; and
(65) complete the required application and pay the specified fee.
(d) Communication. As an emeritus specialist, the member must:
(1) refrain from any written or oral communication that might be misconstrued as client solicitation for legal services; and,
(2) identify emeritus specialist status in all written or oral communication concerning board certification.
(e) Termination of Emeritus Specialist Status. At such time as the member elects to resume the practice of law, the member may regain recertification as a "certified specialist" upon:
(1) completion of all requirements for recertification within a time frame to be determined by the board of legal specialization and education; and
(2) completion of the required application and payment of the specified fee.
(f) Waiver. On special application and for good cause shown, the board of legal specialization and education may waive any portion of this rule if it determines such a waiver to be in the best interest of the certification program and emeritus status.
(fg) Revocation. Existing rules relating to certification revocation shall also apply to emeritus specialist status.
(gh) Exemption. During the 26 years following the effective date of this rule, any member formerly certified by The *715 Florida Bar, whose certificate lapsed or was otherwise not renewed, may apply for emeritus status and qualify for an exemption from the provision that requires current certification. The applicant must demonstrate compliance with all other requirements of this rule. An applicant formerly certified by The Florida Bar, but whose certificate was revoked, is ineligible for this exemption.

RULE 6-3.8 REVOCATION OF CERTIFICATION
(a) Grounds for Revocation. A certificate may be revoked by the board of legal specialization and education if the program for certification in that area is terminated or it is determined after without hearing on appropriateor advance notice thatfor the following reasons:
(a) Termination of Area. If the program for certification in an area is terminated;
(b) Discipline. Disciplinary action is taken against a member pursuant to the Rules Regulating The Florida Bar;
(c) Criminal Action. When a member is found guilty, regardless of whether adjudication is imposed or withheld, of any crime involving dishonesty or a felony; or
(d) Miscellaneous. When it is determined, after hearing on appropriate notice, that:
(1) the certificate was issued to a lawyer who was not eligible to receive a certificate or who made any false representation or misstatement of material fact to the certification committee or the board of legal specialization and education;
(2) the certificate holder failed to abide by all rules and regulations governing the program promulgated by the board of governors or the board of legal specialization and education as amended from time to time, including any requirement or safeguard for continued proficiency;
(3) the certificate holder failed to pay any fee established by the plan; or
(4) the certificate holder no longer meets the qualifications established by the plan or the board of legal specialization and education.; or
(5) the certificate holder engaged in misconduct that is inconsistent with the demonstration of special knowledge, skills, proficiency, or ethical conduct and professionalism.
(b) Revocation Due to Disciplinary Action. A certificate may be revoked by the board of governors by reason of disciplinary action taken pursuant to the Rules Regulating The Florida Bar.

RULE 10-2.1 GENERALLY
Whenever used in these rules the following words or terms shall have the meaning herein set forth unless the use thereof shall clearly indicate a different meaning:
(a) Unlicensed Practice of Law. The unlicensed practice of law shall mean the practice of law, as prohibited by statute, court rule, and case law of the state of Florida. For purposes of this chapter:
(1) It shall not constitute the unlicensed practice of law for a nonlawyer to engage in limited oral communications to assist a person in the completion of blanks on a legal form approved by the Supreme Court of Florida. Oral communications by nonlawyers are restricted to those communications reasonably necessary to elicit factual information to complete the blanks on the form and inform the person how to file the form. Legal forms approved by the Supreme Court of Florida which may be completed as set forth herein shall only include *716 and are limited to forms approved by the Supreme Court of Florida pursuant to rule 10-2.1(a) [formerly rule 10-1.1(b)] of the Rules Regulating The Florida Bar, the Family Law Forms contained in the Florida Family Law Rules of Procedure, and the Florida Supreme Court Approved Family Law Forms contained in the Florida Family Law Rules of Procedure.
(A) Except for forms filed by the petitioner in an action for an injunction for protection against domestic or repeat violence, the following language shall appear on any form completed pursuant to this rule by a nonlawyer and any individuals assisting in the completion of the form shall provide their name, business name, address, and telephone number on the form:
This form was completed with the assistance of:
 Name of Individual
 Name of Business
 Address
 Telephone Number
(B) Before a nonlawyer assists a person in the completion of a form in the manner set forth in this rule, the nonlawyer shall provide the person with a copy of a disclosure. A copy of the disclosure, signed by both the nonlawyer and the person, shall be given to the person to retain and the nonlawyer shall keep a copy in the person's file. The disclosure does not act as or constitute a waiver, disclaimer, or limitation of liability. The disclosure shall which contains the following provisions:
(Name) told me that he/she is not a nonlawyer and may not give legal advice or, cannot tell me what my rights or remedies are, cannot tell me how to testify in court, and cannot represent me in court.
Rule 10-2.1(b) of the Rules Regulating The Florida Bar defines a paralegal as a person who works under the supervision of a member of The Florida Bar and who performs specifically delegated substantive legal work for which a member of The Florida Bar is responsible. Only persons who meet the definition may call themselves paralegals. (Name) informed me that he/she is not a paralegal as defined by the rule and cannot call himself/herself a paralegal.
(Name) told me that he/she may only help me fill out a form approved by the Supreme Court of Florida. type the factual information provided by me in writing into the blanks on the form. (Name) may not help me fill in the form and may not complete the form for me. If using a form approved by the Supreme Court of Florida, (Name) may only help me by asking me factual questions to fill in the blanks on the form. (Name) and may also tell me how to file the form.
(Name) told me that he/she is not a lawyer and cannot tell me what my rights or remedies are or how to testify in court.
____ I can read English
____ I cannot read English but this notice was read to me by (Name) in (Language) which I understand.
(C) A copy of the disclosure, signed by both the nonlawyer and the person, shall be given to the person to retain and the nonlawyer shall keep a copy in the person's file. The nonlawyer shall also keep copies for at least 6 years of all forms given to the person being assisted. The disclosure does not act as or constitute a waiver, disclaimer, or limitation of liability.

*717 (2) It shall constitute the unlicensed practice of law for a person who does not meet the definition of paralegal or legal assistant as set forth elsewhere in these rules to offer or provide legal services directly to the public or for a person who does not meet the definition of paralegal or legal assistant as set forth elsewhere in these rules to use the title paralegal, legal assistant, or other similar term in providing legal services or legal forms preparation services directly to the public.
(3) It shall constitute the unlicensed practice of law for a lawyer admitted in a state other than Florida to advertise to provide legal services in Florida which the lawyer is not authorized to provide.
(b) Paralegal or Legal Assistant. A paralegal or legal assistant is a person qualified by education, training, or work experience, who works under the supervision of a member of The Florida Bar and who performs specifically delegated substantive legal work for which a member of The Florida Bar is responsible. A nonlawyer or a group of nonlawyers may not offer legal services directly to the public by employing a lawyer to provide the lawyer supervision required under this rule.
(c) Nonlawyer or Nonattorney. For purposes of this chapter, a nonlawyer or nonattorney is an individual who is not a member of The Florida Bar. This includes, but is not limited to, lawyers admitted in other jurisdictions, law students, law graduates, applicants to The Florida Bar, disbarred lawyers, and lawyers who have resigned from The Florida Bar. A suspended lawyer, while a member of The Florida Bar during the period of suspension as provided elsewhere in these rules, does not have the privilege of practicing law in Florida during the period of suspension.
(d) This Court or the Court. This court or the court shall mean the Supreme Court of Florida.
(e) Bar Counsel. Bar counsel is a member of The Florida Bar representing The Florida Bar in any proceeding under these rules.
(f) Respondent. A respondent is a nonlawyer who is accused of engaging in the unlicensed practice of law or whose conduct is under investigation.
(g) Referee. A referee is the judge or retired judge appointed to conduct proceedings as provided under these rules.
(h) Standing Committee. The standing committee is the committee constituted according to the directives contained in these rules.
(i) Circuit Committee. A circuit committee is a local unlicensed practice of law circuit committee.
(j) UPL Counsel. UPL counsel is the director of the unlicensed practice of law department and an employee of The Florida Bar employed to perform such duties, as may be assigned, under the direction of the executive director.
(k) UPL. UPL is the unlicensed practice of law.
(l) The Board or Board of Governors. The board or board of governors is the board of governors of The Florida Bar.
(m) Designated Reviewer. The designated reviewer is a member of the board of governors responsible for review and other specific duties as assigned by the board of governors with respect to a particular circuit committee or matter. If a designated reviewer recuses or is unavailable, any other board member may serve as designated reviewer in that matter. The designated reviewer will be selected, from time to time, by the board members from the circuit of such circuit committee. *718 If circuits have an unequal number of circuit committees and board members, review responsibility will be reassigned, from time to time, to equalize workloads. On such reassignments responsibility for all pending cases from a particular committee passes to the new designated reviewer. UPL staff counsel will be given written notice of changes in the designated reviewing members for a particular committee.
(n) Executive Committee. The executive committee is the executive committee of the board of governors of The Florida Bar. All acts and discretion required by the board under these rules may be exercised by its executive committee between meetings of the board as may from time to time be authorized by standing policies of the board of governors.

RULE 10-6.1 HEARINGSTAKING OF TESTIMONY
(a) Conduct of Proceedings. The proceedings of circuit committees and the standing committee when hearings are heldtestimony is taken may be informal in nature and the committees shall not be bound by the rules of evidence.
(b) Taking Testimony. Bar counsel, the standing committee, each circuit committee, and members thereof conducting investigations are empowered to take and have transcribed the testimony and evidence of witnesses. If the testimony is recorded stenographically or otherwise, the witness shall be sworn by any person authorized by law to administer oaths.
(c) Rights and Responsibilities of Respondent. The respondent may be required to appear and to produce evidence as any other witness unless the respondent claims a privilege or right properly available to the respondent under applicable federal or state law. The respondent may be accompanied by counsel.
(d) Rights of Complaining Witness. The complaining witness is not a party to the investigative proceeding although the complainant may be called as a witness should the matter come before a judge or a referee. The complainant may be granted the right to be present at any circuit committee hearingproceeding when the respondent is present before the committee to give testimony. The complaining witness shall have no right to appeal the finding of the circuit committee.

RULE 10-6.2 SUBPOENAS
(a) Issuance by Court. Upon receiving a written application of the chair of the standing committee or of a circuit committee or bar counsel alleging facts indicating that a person or entity is or may be practicing law without a license and that the issuance of a subpoena is necessary for the investigation of such unlicensed practice, the clerk of the circuit court in which the committee is located or the clerk of the Supreme Court of Florida shall issue subpoenas in the name, respectively, of the chief judge of the circuit or the chief justice for the attendance of any person and or production of books and records or both before counsel or the investigating circuit committee or any member thereof at the time and place designated in such application. Such subpoenas shall be returnable to the circuit court of the residence or place of business of the person subpoenaed. A like subpoena shall issue upon application by any person or entity under investigation.
(b) Failure to Comply. Failure to comply with any subpoena shall constitute a contempt of court and may be punished by the Supreme Court of Florida or by the circuit court of the circuit to which the subpoena is returnable or where the contemnor *719 may be found. The circuit court to which the subpoena is returnable shall have power to enter such orders as may be necessary for the enforcement of the subpoena.

RULE 10-7.1 PROCEEDINGS FOR INJUNCTIVE RELIEF
(a) Filing Complaints. Complaints for civil injunctive relief shall be by petition filed in the Supreme Court of Florida by The Florida Bar in its name.
(b) Petitions for Injunctive Relief. Each such petition shall be processed in the Supreme Court of Florida in accordance with the following procedure:
(1) The petition shall not be framed in technical language but shall with reasonable clarity set forth the facts constituting the unlicensed practice of law. A demand for relief may be included in the petition but shall not be required.
(2) The court, upon consideration of any petition so filed, may issue its order to show cause directed to the respondent commanding the respondent to show cause, if there be any, why the respondent should not be enjoined from the unlicensed practice of law alleged, and further requiring the respondent to file with the court and serve upon UPL staff counsel within 20 days after service on the respondent of the petition and order to show cause a written answer admitting or denying each of the matters set forth in the petition. The legal sufficiency of the petition may, at the option of the respondent, be raised by motion to dismiss filed prior to or at the time of the filing of the answer. The filing of a motion to dismiss prior to the filing of an answer shall postpone the time for the filing of an answer until 10 days after disposition of the motion. The order and petition shall be served upon the respondent in the manner provided for service of process by Florida Rule of Civil Procedure 1.070(b). Service of all other pleadings shall be governed by the provisions of Florida Rule of Civil Procedure 1.080.
(3) Any party may request oral argument upon any question of law raised by the initial pleadings. The court may, in its discretion, set the matter for oral argument upon the next convenient motion day or at such time as it deems appropriate.
(4) If no response or defense is filed within the time permitted, the allegations of the petition shall be taken as true for purposes of that action. The court will then, upon its motion or upon motion of any party, decide the case upon its merits, granting such relief and issuing such order as might be appropriate; or it may refer the petition for further proceedings according to rule 10-7.1(b)(6).
(5) If a response or defense filed by a respondent raises no issue of material fact, any party, upon motion, may request summary judgment and the court may rule thereon as a matter of law.
(6) The court may, upon its motion or upon motion of any party, enter a judgment on the pleadings or refer questions of fact to a referee for determination.
(c) Proceedings Before the Referee. Proceedings before the referee shall be in accordance with the following:
(1) The proceedings shall be held in the county where the respondent resides or where the alleged offense was committed, whichever shall be designated by the court.
(2) Within 60 days of the order assigning the case to the referee, the referee shall conduct a case management conference. The purpose of the conference is to set a schedule for the proceedings, *720 including discovery deadlines and a final hearing date. The referee shall enter a written order in the proceedings reflecting the schedule determined at the conference.
(23) Subpoenas for the attendance of witnesses and the production of documentary evidence shall be issued in the name of the court by the referee upon request of a party. Failure or refusal to comply with any subpoena shall be contempt of court and may be punished by the court or by any circuit court where the action is pending or where the contemnor may be found, as if said refusal were a contempt of that court.
(34) The Florida Rules of Civil Procedure, including those provisions pertaining to discovery, not inconsistent with these rules shall apply in injunctive proceedings before the referee. The powers and jurisdiction generally reposed in the court under those rules may in this action be exercised by the referee. The Florida Bar may in every case amend its petition 1 time as of right, within 60 days after the filing of the order referring the matter to a referee.
(45) Review of interlocutory rulings of the referee may be had by petition to the court filed within 30 days after entry of the ruling complained of. A supporting brief or memorandum of law and a transcript containing conformed copies of pertinent portions of the record in the form of an appendix shall be filed with the court by a party seeking such review. Any opposing party may file a responsive brief or memorandum of law and appendix containing any additional portions of the record deemed pertinent to the issues raised within 10 days thereafter. The petitioner may file a reply brief or memorandum of law within 5 days of the date of service of the opposing party's responsive brief or memorandum of law. Any party may request oral argument at the time that party's brief or memorandum of law is filed or due. Interlocutory review hereunder shall not stay the cause before the referee unless the referee or the court on its motion or on motion of any party shall so order.
(d) Referee's Report.
(1) Generally. At the conclusion of the hearing, the referee shall file a written report with the court stating findings of fact, conclusions of law, a statement of costs incurred and recommendations as to the manner in which costs should be taxed as provided elsewhere in this chapter, and a recommendation for final disposition of the cause which may include the imposition of a civil penalty not to exceed $1000 per incident and a recommendation for restitution as provided elsewhere in this chapter. The original record shall be filed with the report. Copies of the referee's report shall be served upon all parties by the referee at the time it is filed with the court.
(2) Costs. The referee shall have discretion to recommend the assessment of costs. Taxable costs of the proceeding shall include only:
(A) investigative costs;
(B) court reporters' fees;
(C) copy costs;
(D) telephone charges;
(E) fees for translation services;
(F) witness expenses, including travel and out-of-pocket expenses;
(G) travel and out-of-pocket expenses of the referee; and
(H) travel and out-of-pocket expenses of counsel in the proceedings, including those of the respondent if acting as counsel; and

*721 (I) any other costs which may properly be taxed in civil litigation.
(3) Restitution. The referee shall have discretion to recommend that the respondent be ordered to pay restitution, which shall be paid before costs. In such instances, the amount of restitution shall be specifically set forth in the referee's report and shall not exceed the amount paid to respondent by complainant(s). The referee's report shall also state the name(s) of the complainant(s) to whom restitution is to be made, the amount of restitution to be made, and the date by which it shall be completed. The referee shall have discretion over the timing of payments and over how those payments are to be distributed to multiple complainants. In determining the amount of restitution to be paid to complainant(s), the referee shall consider any documentary evidence that shows the amount paid to respondent by complainant(s) including:
(A) cancelled checks;
(B) credit card receipts;
(C) receipts from respondent; and
(D) any other documentation evidencing the amount of payment.
The referee shall also have discretion to recommend that restitution shall bear interest at the legal rate provided for judgments in this state. Nothing in this section shall preclude an individual from seeking redress through civil proceedings to recover fees or other damages.
(4) Stipulated Injunction. Should the parties enter into a stipulated injunction prior to the hearing, the stipulation shall be filed with the referee. The referee may approve the stipulation or reject the stipulation and schedule a hearing as provided elsewhere in these rules. If accepted, the stipulation and original record shall then be filed with the court for final approval of the stipulation and entry of an injunction. A written report as described in rule 10-7.1(d)(1) shall be filed by the referee along with the stipulation. The respondent may agree to pay restitution in the stipulation. In such instances the amount of restitution, to whom it shall be made, how payments are to be made, the date by which it shall be completed, and whether interest as provided elsewhere in this chapter will be paid, shall be specifically set forth in the stipulation.
(e) Review by the Supreme Court of Florida.
(1) Objections to the report of the referee shall be filed with the court by any party aggrieved, within 30 days after the filing of the report. If the objector desires, a brief or memorandum of law in support of the objections may be filed at the time the objections are filed. Any other party may file a responsive brief or memorandum of law within 20 days of service of the objector's brief or memorandum of law. The objector may file a reply brief or memorandum of law within 10 days of service of the opposing party's responsive brief or memorandum of law. Oral argument will be allowed at the court's discretion and will be governed by the provisions of the Florida Rules of Appellate Procedure.
(2) Upon the expiration of the time to file objections to the referee's report, the court shall review the report of the referee, together with any briefs or memoranda of law or objections filed in support of or opposition to such report. After review, the court shall determine as a matter of law whether the respondent has engaged in the unlicensed practice of law, whether the respondent's activities should be enjoined by appropriate order, whether costs should be *722 awarded, whether restitution should be ordered, and whether further relief shall be granted. Any order of the court that contains an order of restitution shall contain a requirement that the respondent provide a monthly written report to the UPL Department of The Florida Bar detailing the complainant(s) to whom restitution has been made and the amounts paid. In the event respondent fails to pay the restitution as ordered by the court, The Florida Bar is authorized to file a petition for indirect criminal contempt as provided elsewhere in this chapter.
(f) Issuance of Preliminary or Temporary Injunction. Nothing set forth in this rule shall be construed to limit the authority of the court, upon proper application, to issue a preliminary or temporary injunction, or at any stage of the proceedings to enter any such order as the court deems proper when public harm or the possibility thereof is made apparent to the court, in order that such harm may be summarily prevented or speedily enjoined.

RULE 10-7.2 PROCEEDINGS FOR INDIRECT CRIMINAL CONTEMPT
(a) Petitions for Indirect Criminal Contempt. Nothing set forth herein shall be construed to prohibit or limit the right of the court to issue a permanent injunction in lieu of or in addition to any punishment imposed for an indirect criminal contempt.
(1) Upon receiving a sworn petition of the president, executive director of The Florida Bar, or the chair of the standing committee alleging facts indicating that a person, firm, or corporation is or may be unlawfully practicing law or has failed to pay restitution as provided elsewhere in this chapter, and containing a prayer for a contempt citation, the court may issue an order directed to the respondent, stating the essential allegations charged and requiring the respondent to appear before a referee appointed by the court to show cause why the respondent should not be held in contempt of this court for the unlicensed practice of law or for the failure to pay restitution as ordered. The referee shall be a circuit judge of the state of Florida. The order shall specify the time and place of the hearing, and a reasonable time shall be allowed for preparation of the defense after service of the order on the respondent.
(2) The respondent, personally or by counsel, may move to dismiss the order to show cause, move for a statement of particulars, or answer such order by way of explanation or defense. All motions and the answer shall be in writing. A respondent's omission to file motions or answer shall not be deemed as an admission of guilt of the contempt charged.
(b) Indigency of Respondent. Any respondent who is determined to be indigent by the referee shall be entitled to the appointment of counsel.
(1) Affidavit. A respondent asserting indigency shall file with the referee a completed affidavit containing the financial information required herein and stating that the affidavit is signed under oath and under penalty of perjury. The affidavit must contain the following financial information and calculations as to the respondent's income:
(A) Net income. Total salary and wages, minus deductions required by law, including court-ordered support payments.
(B) Other income. Including, but not limited to, social security benefits, union funds, veterans' benefits, workers' *723 compensation, other regular support from absent family members, public or private employee pensions, unemployment compensation, dividends, interest, rent, trusts, and gifts.
(C) Assets. Including, but not limited to, cash, savings accounts, bank accounts, stocks, bonds, certificates of deposit, equity in real estate, and equity in a boat, motor vehicle, or other tangible property.
In addition to the financial information, the affidavit must contain the following statement: "I, (name of accused person), agree to report any change in my financial situation to the court or to the indigency examiner."
(2) Determination. After reviewing the affidavit and questioning the respondent, the referee shall make one of the following determinations: the respondent is indigent; or the respondent is not indigent.
A respondent is indigent if:
(A) the income of the person is equal to or below 250200 percent of the then-current federal poverty guidelines prescribed for the size of the household of the accusedrespondent by the United States Department of Health and Human Services or if the person is receiving Aid to Families with Dependent Children (AFDC)Temporary Assistance for Needy Families-Cash Assistance, poverty-related veterans' benefits, or Supplemental Security Income (SSI); or
(B) the person is unable to pay for the services of an attorney without substantial hardship to his or her family.
(3) Presumption. In proceedings for the determination of indigency the referee shall determine whether any of the following facts exist, and the existence of any such fact shall create a presumption that the respondent is not indigent:
(A) the respondent has been released on bail in the amount of $5,000 or more;
(B) the respondent owns, or has equity in, any intangible or tangible personal property or real property or the expectancy of an interest in any such property; or
(C) the respondent retained private counsel immediately before or after filing the affidavit asserting indigency as required herein.
(c) Proceedings Before the Referee. Proceedings before the referee shall be in accordance with the following:
(1) Venue for the hearing before the referee shall be in the county where the respondent resides or where the alleged offense was committed, whichever shall be designated by the court.
(2) The court or referee may issue an order of arrest of the respondent if the court or referee has reason to believe the respondent will not appear in response to the order to show cause. The respondent shall be admitted to bail in the manner provided by law in criminal cases.
(3) The respondent shall be arraigned at the time of the hearing before the referee, or prior thereto upon request. A hearing to determine the guilt or innocence of the respondent shall follow a plea of not guilty. The respondent is entitled to be represented by counsel, have compulsory process for the attendance of witnesses, and confront witnesses against the respondent. The respondent may testify in the respondent's own defense. No respondent may be compelled to testify. A presumption of innocence shall be accorded the respondent. The Florida Bar, which shall act *724 as prosecuting authority, must prove guilt of the respondent beyond a reasonable doubt.
(4) Subpoenas for the attendance of witnesses and the production of documentary evidence shall be issued in the name of the court by the referee upon request of a party. Failure or refusal to comply with any subpoena shall be contempt of court and may be punished by the court or by any circuit court where the action is pending or where the contemnor may be found, as if said refusal were a contempt of that court.
(5) The referee shall hear all issues of law and fact and all evidence and testimony presented shall be transcribed.
(6) At the conclusion of the hearing, the referee shall sign and enter of record a judgment of guilty or not guilty. There should be included in a judgment of guilty a recital of the facts constituting the contempt of which the respondent has been found and adjudicated guilty, and the costs of prosecution, including investigative costs and restitution, if any, shall be included and entered in the judgment rendered against the respondent. The amount of restitution shall be specifically set forth in the judgment and shall not exceed the amount paid to respondent by complainant(s). The judgment shall also state the name of the complainant(s) to whom restitution is to be made, the amount of restitution to be made, and the date by which it shall be completed. The referee shall have discretion over the timing of payments, over how those payments are to be distributed to multiple complainant(s), and whether restitution shall bear interest at the legal rate provided for judgments in this state. In determining the amount of restitution to be paid to complainant(s), the referee shall consider any documentary evidence that shows the amount paid to respondent by complainant(s), including cancelled checks, credit card receipts, receipts from respondent, and any other documentation evidencing the amount of payment. Nothing in this section shall preclude an individual from seeking redress through civil proceedings to recover fees or other damages.
(7) Prior to the pronouncement of a recommended sentence upon a judgment of guilty, the referee shall inform the respondent of the accusation and judgment and afford the opportunity to present evidence of mitigating circumstances. The recommended sentence shall be pronounced in open court and in the presence of the respondent.
(d) Review by the Supreme Court of Florida. The judgment and recommended sentence, upon a finding of "guilty," together with the entire record of proceedings shall then be forwarded to this court for approval, modification, or rejection based upon the law. The respondent may file objections, together with a supporting brief or memorandum of law, to the referee's judgment and recommended sentence within 30 days of the date of filing with the court of the referee's judgment, recommended sentence, and record of proceedings. The Florida Bar may file a responsive brief or memorandum of law within 20 days after service of respondent's brief or memorandum of law. The respondent may file a reply brief or memorandum of law within 10 days after service of The Florida Bar's responsive brief or memorandum of law.
(e) Fine or Punishment. The punishment for an indirect criminal contempt under this chapter shall be by fine, not to exceed $2500, imprisonment of up to 5 months, or both.
*725 (f) Costs and Restitution. The court may also award costs and restitution.

RULE 10-8.1 FILES
(a) Files Are Property of Bar. All matters, including files, preliminary investigation reports, interoffice memoranda, records of investigations, and the records in trials and other proceedings under these rules, except those unlicensed practice of law matters conducted in county or circuit courts, are property of The Florida Bar. All of those matters shall be confidential and shall not be disclosed except as provided in these rules. When disclosure is permitted under these rules, it shall be limited to information concerning the status of the proceedings and any information that is part of the UPL record as defined in these rules.
(b) UPL Record. The UPL record shall consist of the record before a circuit committee, the record before a referee, the record before the Supreme Court of Florida, and any reports, correspondence, papers, and recordings and transcripts of hearings and transcribed testimony furnished to, served on, or received from the respondent or the complainant. The record before the circuit committee shall consist of all reports, correspondence, papers, and recordings furnished to or received from the respondent and the transcript of circuit committee meetings or hearings transcribed testimony, if the proceedings were attended by a court reporter; provided, however, that the committee may retire into private session to debate the issues involved and to reach a decision as to the action to be taken. The record before a referee and the record before the Supreme Court of Florida shall include all items properly filed in the cause including pleadings, transcripts of testimony, exhibits in evidence, and the report of the referee.
(c) Limitations on Disclosure. Any material provided to or promulgated by The Florida Bar that is confidential under applicable law shall remain confidential and shall not be disclosed except as authorized by the applicable law. If this type of material is made a part of the UPL record, that portion of the UPL record may be sealed by the circuit committee chair, the referee, or the court.
(d) Disclosure of Information. Unless otherwise ordered by this court or the referee in proceedings under this rule, nothing in these rules shall prohibit the complainant, respondent, or any witness from disclosing the existence of proceedings under these rules or from disclosing any documents or correspondence served on or provided to those persons.
(e) Response to Inquiry. Representatives of The Florida Bar, authorized by the board of governors, shall reply to inquiries regarding a pending or closed unlicensed practice of law investigation as follows:
(1) Cases Opened Prior To November 1, 1992. Cases opened prior to November 1, 1992, shall remain confidential.
(2) Cases Opened On or After November 1, 1992. In any case opened on or after November 1, 1992, the fact that an unlicensed practice of law investigation is pending and the status of the investigation shall be public information; however, the UPL record shall remain confidential except as provided in rule 10-8.1(e)(4).
(3) Recommendations of Circuit Committee. The recommendation of the circuit committee as to the disposition of an investigation opened on or after November 1, 1992, shall be public information; however, the UPL record *726 shall remain confidential except as provided in rule 10-8.1(e)(4).
(4) Final Action by Circuit Committee, Standing Committee and Bar Counsel. The final action on investigations opened on or after November 1, 1992, shall be public information. The UPL record in cases opened on or after November 1, 1992, that are closed by the circuit committee, the standing committee, or bar counsel as provided elsewhere in these rules, cases where a cease and desist affidavit has been accepted, and cases where a litigation recommendation has been approved shall be public information and may be provided upon specific inquiry except that information that remains confidential under rule 10-8.1(c). The Florida Bar may charge a reasonable fee for identification of and photocopying the documents.
(f) Production of UPL Records Pursuant to Subpoena. The Florida Bar, pursuant to a valid subpoena issued by a regulatory agency, may provide any documents that are a portion of the UPL record even if otherwise deemed confidential under these rules. The Florida Bar may charge a reasonable fee for identification of and photocopying the documents.
(g) Notice to Judges. Any judge of a court of record may be advised as to the status of a confidential unlicensed practice of law case and may be provided with a copy of the UPL record. The judge shall maintain the confidentiality of the matter.
(h) Response to False or Misleading Statements. If public statements that are false and misleading are made about any UPL case, The Florida Bar may make any disclosure necessary to correct such false or misleading statements.
(i) Providing Otherwise Confidential Material. Nothing contained herein shall prohibit The Florida Bar from providing otherwise confidential material as provided in rule 10-3.2(e).
NOTES
[1] Pursuant to Rule Regulating the Florida Bar 1-12.1(i), the Bar asks this Court to waive review of these minimal revisions by the Board of Governors and the publication of any revisions that were not published in The Florida Bar News. The Court has reviewed the revisions and, because they are not controversial, grants the Bar's request for waiver.
[2] Several comments were filed regarding one of the published proposals for rule 4-1.5. In response, the Bar subsequently filed an amended proposal that deleted the controversial aspect of the proposed changes to rule 4-1.5. Thus, that particular aspect of the proposal is not before the Court. In addition, the Bar determined to withdraw its proposed amendments to rule 3-7.2.